ALLEN, Auditor, & Another *v.* BALTIMORE & OHIO RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR·THE WESTERN DISTRICT OF VIRGINIA.

The general questions arising·and argued in this case are fully discussed and decided in the case of *Poindexter* v. *Greenhow, ante,* 270.

The remedy by injunction to prevent the collection of taxes by distraint upon the rolling-stock, machinery, cars and engines, and other property of railroad corporations, after a tender of payment in tax-receivable coupons, is sanctioned by repeated decisions of this court, and has become common and unquestioned practice, in·similar cases, where exemptions have been claimed in virtue of the Constitution of the United States; the ground of the jurisdiction being that there is no adequate remedy at law.

*Mr. F. S. Blair,* Attorney-General of the State of Virginia, and *Mr. Richard T. Merrick* for appellants.

*Mr. John K. Cowen* and *Mr. Hugh W. Sheffey* for appellee. [*Mr. William L. Royall* filed a brief for same. *Mr. Daniel H. Chamberlain* and *Mr. William B. Hornblower* also filed a brief for same.]

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is a bill in equity filed by the Baltimore and Ohio Railroad Company, a corporation created by the laws of Maryland, and a citizen of that State, against the appellants, who were defendants below, of whom Allen·is Auditor of Public Accounts; Revely, Treasurer of the State of Virginia, and Hamilton, Treasurer of Augusta County, in that State, and all citizens of Virginia.

The complainant is the lessee in possession of certain railway lines·in Virginia—the Winchester·and Potomac, the Winchester and Strasburg; and the Strasburg and Harrisonburg Railroads—and also operates a railroad belonging to the Valley Railroad Company in that State.

It is alleged in the bill that, "by the 20th and 21st sections of an act of the General Assembly of Virginia, approved on

the 22d day of April, 1882, and entitled 'An Act for the assessment of taxes on persons, property, income, and licenses, and imposing taxes thereon for the support of the government and free schools and to pay the interest on the public debt,' provision was made for the assessment and taxation of the railroads within the State, the board of public works, acting upon the reports of the officers of the railroad companies, and upon the best and most reliable information that could be procured, being authorized and required to ascertain and assess the value of the real and personal property of such companies for taxation at the rate of forty cents on every hundred dollars of the estimated value thereof; and said act further provides that it shall be the duty of every railroad company so assessed to pay into the treasury of the State, within sixty days after receipt of notice of such assessment, the tax imposed by law; and a company failing to pay the tax assessed upon its property shall be immediately assessed under the direction of the auditor of public accounts, by any person appointed by him for the purpose, rating their real estate and rolling-stock at $20,000 per mile, and a tax thereon levied of forty cents on the $100.00 of such fixed value; and the amount so assessed shall be collected by any treasurer to whom the auditor may deliver the assessment, who is authorized to distrain and sell any personal property of such company for the amount of such taxes."

It is further alleged, that on November 22, 1882, the board of public works assessed said railroads for taxation at the rate of $15,000 per mile, of which notice was given to the complainant, on January 17, 1883, as the party liable by law for the payment of the taxes assessed upon them; that on March 16, 1884, within sixty days thereafter, the complainant obtained from the auditor of public accounts warrants to pay into the treasury the several amounts charged as to each of said railroads, which the treasurer of the Commonwealth, by indorsement thereon, required to be paid into a specified bank in the City of Richmond, that being the only mode recognized by law for making such payments; that, at that time, the complainant, being the owner and holder of the requisite amount of coupons for interest cut from bonds of the State of Virginia,

issued under the act of March 20, 1871, entitled " An Act to provide for the funding and payment of the public debt," and receivable by virtue thereof in payment of taxes, tendered the same, with coin, sufficient exactly to make the required amounts, to the said bank in Richmond, in discharge of said warrants; that said coupons were refused, and the same having been set apart, the complainant brings the same into court, subject to its order in payment of said taxes; that similar tenders were made to the auditor of public accounts, and to the treasurer of State, on the same day, each of whom refused to receive the same; that thereupon the defendant, Allen, the auditor of public accounts, proceeded to assess the said railroads upon their real estate, not having any rolling-stock, at $20,000 per mile, as being in default for non-payment of the taxes assessed by the board of public works; and placed copies of said assessment in the hands of the defendant, Hamilton, as treasurer of Augusta County, for collection, in pursuance of which he levied upon certain cars and locomotives belonging to the complainant, used in operating said railroads, for part of said taxes, and threatens to make further levies upon other cars and engines, to be sold for payment of said taxes, so assessed by the auditor of public accounts.

The bill prays for an injunction on the several grounds of irreparable damage; that the acts complained of prevent the proper exercise by the complainant of its franchise, involving a public duty, of operating the railroads of which it is lessee, and in possession; to avoid multiplicity of suits; the want of adequate remedies at law; to remove the cloud upon the title to the railroad property, occasioned by the fact that assessed taxes are a lien thereon; and because it is necessary to protect the complainant in the immunity to which it is entitled, by virtue of the contract with the State of Virginia, secured against State laws impairing its obligation by the Constitution of the United States.

It is admitted by the parties in the record that the coupons tendered are genuine, though not verified as required by the act of January 14, 1882. It is also admitted, in like manner, that if the property of the complainant levied on should be

sold " great sacrifice and loss must result therefrom; and that the withdrawal from complainant's use of the amount of rolling-stock and machinery levied on, and proposed to be sold as aforesaid, will cause serious and prolonged embarrassment to complainant's business; that much delay must accrue before such rolling-stock and machinery, if sold, can be replaced, and that it will be difficult, if not impracticable, to ascertain and estimate, with even proximate certainty, the losses and damages which would result to complainant from such sale; so that, although the estate of said J. Ed. Hamilton should be sufficient to meet any verdict for damages, in case the sale should be adjudged to have been illegal, the pecuniary value of the complainant's losses and damages could not be properly and adequately ascertained and fixed by the verdict of a jury."

There was a final decree in favor of the complainant for a perpetual injunction, as prayed for, and the case is brought here by appeal by the defendants.

The general questions arising and argued in this and other cases involving them are fully discussed in the opinion in the case of *Poindexter* v. *Greenhow.* The conclusions reached in that judgment apply to the present appeal, and require that the decree of the Circuit Court should be affirmed.

It is deemed proper to add a few observations on the question of the jurisdiction of the Circuit Courts, in such cases, in equity, to grant relief by injunction.

The circumstances of this case bring it, so far as that remedy is in question, fully within the principle firmly established in this court by the decision in *Osborn* v. *The United States Bank,* 9 Wheat. 739, and within the terms of the rule as declared in *Cummings* v. *National Bank,* 101 U. S. 153, quoted in the case of *Poindexter* v. *Greenhow.*

The jurisdiction was exercised with energy in behalf of a stockholder in a banking corporation in *Dodge* v. *Woolsey,* 18 How. 331, where the refusal of the directors of the company to resist the collection of an unconstitutional tax was made the ground of interposition in behalf of a stockholder as a breach of trust.

In *Board of Liquidation* v. *McComb,* 92 U. S. 531, 541, it is

said in the opinion of the court, speaking on the question of remedies:

" On this branch of the subject, the numerous and well-considered cases heretofore decided by this court leave little to be said. The objections to proceeding against State officers by *mandamus* or injunction are: first, that it is, in effect, proceeding against the State itself; and, secondly, that it interferes with the official discretion vested in the officers. It is conceded that neither of these things can be done. A State, without its consent, cannot be sued by an individual; and a court cannot substitute its own discretion for that of executive officers in matters belonging to the proper jurisdiction of the latter. But it has been well settled that, when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a *mandamus* to compel its performance; and when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it. In such cases, the writs of *mandamus* and injunction are somewhat correlative to each other. In either case, if the officer plead the authority of an unconstitutional law for the non-performance or violation of his duty, it will not prevent the issuing of the writ. An unconstitutional law will be treated by the courts as null and void." And the opinion cites *Osborn* v. *Bank of the United States*, 9 Wheat. 739, at page 859, and *Davis* v. *Gray*, 16 Wall. 203, at page 220. The same principle was applied in the *State Railroad Tax Cases*, 92 U. S. 575. In the opinion of the court it is said (p. 615): "In the examination which we have made of these cases, we do not find any of the matters complained of to come within the rule which we have laid down as justifying the interposition of a court of equity. There is no fraud proved, if alleged. There is no violation of the Constitution, either in the statute or in its administration, by the board of equalization. No property is taxed that is not legally liable to taxation; nor is the rule of uniformity prescribed by the Constitution violated." If the

facts here negatived had been affirmed the converse of the rule would have been equally applicable.

In *Transportation Co.* v. *Parkersburg*, 107 U. S. 691, 695, it was declared that a bill in equity would lie which seeks to have a wharfage ordinance declared void, and for an injunction to restrain further collections under it, and any further interference with the right of the complainant to the free navigation of the Ohio River, and, perhaps, as incidental to the other relief, a demand for the return of the wharfage already paid.

The remedy to restrain by injunction taxes levied upon railroads, in alleged violation of a contract with the State, was administered in *Tomlinson* v. *Branch*, 15 Wall. 460, and in numerous other similar cases, where it has been denied, the jurisdiction to grant the relief if the facts had warranted it, has been assumed without question. And see *Litchfield* v. *County of Webster*, 101 U. S. 773.

In the case of national banks, the assessment and collection of taxes illegally assessed under the authority of State laws, in violation of acts of Congress, are habitually restrained by the preventive remedy of injunction; and the jurisdiction of the courts of the United States in those cases is regarded as in the highest degree beneficial and necessary to prevent the agencies of the government of the United States from being hindered and embarrassed in the performance of their functions by State legislation. The exercise of that jurisdiction, and by means of that remedy, in such cases, is to vindicate the supremacy of the Constitution, and to maintain the integrity of the powers and rights which it confers and secures; and that jurisdiction is vested in the courts of the United States because the cases embraced in it are necessarily cases arising under the Constitution and laws of the United States.

Where the rights in jeopardy are those of private citizens, and are of those classes which the Constitution of the United States either confers or has taken under its protection, and no adequate remedy for their enforcement is provided by the forms and proceedings purely legal, the same necessity invokes and justifies, in cases to which its remedies can be applied, that

jurisdiction in equity vested by the Constitution of the United States, and which cannot be affected by the legislation of the States.

In the present case, the jurisdiction in equity to grant the relief prayed for by injunction, and the propriety of its exercise, are alike indisputable.

*The decree of the Circuit Court is accordingly affirmed.*

MR. JUSTICE BRADLEY, with whom concurred THE CHIEF JUSTICE, MR. JUSTICE MILLER and MR. JUSTICE GRAY, dissented. Their dissenting opinion will be found *post*, page 330, after the opinion of the Court in MARYE v. PARSONS.