## BRODNAX v. STATE OF MISSOURI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 598.    Argued December 14, 1910.—Decided January 9, 1911.

In this case, as the statute shows on its face that the subject regulated needed to be regulated for the protection of the public against fraudulent practices to its injury, this court is not prepared to declare that the State has acted beyond its power or the necessities of the case.

While it is the duty of the Federal courts to protect Federal rights from infringement, they should not strike down a police regulation of a State that does not clearly violate the Federal Constitution; they cannot overthrow police legislation because they consider it unwise or inexpedient. *House* v. *Mayes, ante,* p. 270.

Although the due process clause of the Fourteenth Amendment secures liberty of contract, it does not confer liberty to disregard lawful police regulations of the State established by the State for all within its jurisdiction.

A classification of persons keeping places where stocks, bonds and such commodities as grain, petroleum and cotton are dealt in for future and not actual delivery, is a reasonable one and not a denial of equal protection of the laws.

The fact that commodities in course of transportation in interstate commerce are dealt in at certain places does not render a state police statute regulating sales, and imposing stamp tax on records of transactions thereat, which is otherwise valid, an unconstitutional regulation of interstate commerce. *Hatch* v. *Reardon*, 204 U. S. 502.

It is not a violation of the due process, or equal protection, clause of the Fourteenth Amendment, or an unconstitutional regulation of interstate commerce, for a State to prohibit the keeping of a place where purchases or sales are made of stocks, bonds, petroleum, grain, cotton, etc., on margins or otherwise, not paid for or delivered at the time, without record of sale and stamp tax, by a statute applicable to all persons keeping such places, and so held as to the Missouri statute to that effect of March 8, 1907.

THE facts, which involve the constitutionality of a statute of Missouri prohibiting the keeping of places for dealing in stocks, bonds and commodities for future delivery except under certain conditions, are stated in the opinion.

*Mr. Frank Hagerman*, with whom *Mr. Kimbrough Stone* was on the brief, for plaintiff in error:

The act is not limited to all sales of any particular commodity, but are those of particular things, *i. e.*, corporate bonds and stocks, petroleum, cotton, grain and provisions.

No provision is made for the collection of the tax from any person or property. For its enforcement, reliance must be placed solely upon the coercion flowing from the criminality involved in a violation of its terms.

As against the keeper, as each plaintiff in error was, this act must, if at all, be sustained as a police regulation, and as such it is void because interfering with the liberty of contract and because it is discriminatory.

The Fourteenth Amendment secures to everyone the right to carry on a business and to make all contracts

needful for the purpose. *Allgeyer* v. *Louisiana,* 165 U. S. 578, 589; *Holden* v. *Hardy,* 169 U. S. 366, 390; *Lochner* v. *New York,* 198 U. S. 45, 53; *Adair* v. *United States,* 208 U. S. 161, 172. This right to contract is of no value if there be no power to extend credit, or if one to buy or sell must have immediate delivery.

The police power of the State cannot be exercised unreasonably nor in an arbitrary manner, and whether it has been or not is a question solely for the courts. Cases *supra.*

The act considered as a police regulation is discriminatory. *Gulf, C. & S. F. R. Co.* v. *Ellis,* 165 U. S. 150; *Cotting* v. *Godard,* 183 U. S. 79; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *State* v. *Loomis,* 115 Missouri, 307, 314; *State* v. *Julow,* 192 Missouri, 163, 177; *State* v. *Walsh,* 136 Missouri, 400, 405; *State* v. *Mikisek,* 225 Missouri, 561, 577.

It singles out certain articles, the sale of which at certain places is lawful and not harmful, but absolutely necessary, and attempts to classify those who there sell on credit or for future delivery, as distinguished from those who sell the same articles for the same prices for cash and make present delivery. No case has ever gone to the extent of sustaining such classification for any purpose whatever. Such classification is arbitrary, artificial and fanciful, and does not rest upon a distinction differentiating the particular persons to be affected. Gray on Limitation of Taxing Power, § 1435; *Southern Ry. Co.* v. *Greene,* 216 U. S. 406, 417; *People* v. *Mensching,* 187 N. Y. 8; *Barbier* v. *Connolly,* 113 U. S. 27; *Gulf, C. & S. F. R. Co.* v. *Ellis,* 165 U. S. 150; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Raymond* v. *Chicago Traction Co.,* 207 U. S. 20, 37; *Tiernan* v. *Rinker,* 102 U. S. 123; *Webber* v. *Virginia,* 103 U. S. 344; *Walling* v. *Michigan,* 116 U. S. 446; *State* v. *Gorbroski,* 111 Iowa, 496; *O'Keefe* v. *Summerville,* 190 Massachusetts, 110.

See also where laws have been held to be discriminatory when they impose a tax only upon foreign unnaturalized laborers, *Juniata Limestone Co.* v. *Fagley*, 187 Pa. St. 193; *Fraser* v. *Conway*, 6 Pa. Dist. R. 555; on peddlers, except those "persons who have served in the Union army or navy," *State* v. *Garbroski*, 111 Iowa, 496; on taxable inhabitants who had not paid a previous assessment, *State* v. *Township*, 36 N. J. L. 66; on peddlers and transient merchants but not upon permanent merchants doing the same kind of business, *State ex rel.* v. *Parr*, 109 Minnesota, 147; *State* v. *Wagener*, 69 Minnesota, 206; upon peddlers in the State other than those of a particular county, *Commonwealth* v. *Snyder*, 182 Pa. St. 630; requiring a license from each individual plumber, but providing that the license of one member of a firm or manager of a corporation should be sufficient, *State* v. *Benzenburg*, 101 Wisconsin, 172; *State* v. *Gardner*, 58 Ohio St. 599; providing that a license fee for a place upon one street of a city shall be higher than when it is upon another, *Harrodsburg* v. *Renfro* (Ky.), 58 S. W. Rep. 695. And see *Lassen Co.* v. *Cone*, 72 California, 387.

The act is unconstitutional as regulating interstate commerce.

This court will look through forms to the substance of things and if in substance there is any interference, state legislation so interfering must fall, no matter how general its form and even though interstate transactions are not specifically mentioned. *West. Un. Tel. Co.* v. *Coleman*, 216 U. S. 1; *Galveston, H. & T. R. Co.* v. *Texas*, 210 U. S. 217; *Pullman Co.* v. *Kansas*, 216 U. S. 56; *International Book Co.* v. *Pigg*, 217 U. S. 91.

If the act be treated as an occupation or license tax, or one for facilities used for such sale, it is still in substance a tribute laid upon property engaged in interstate commerce. *Bivin* v. *Maryland*, 12 Wheat. 419; *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489; *Lyng* v.

*Michigan*, 135 U. S. 161; *Asher* v. *Texas*, 128 U. S. 129; *Brennan* v. *Titusville*, 153 U. S. 289; *Stockard* v. *Morgan*, 185 U. S. 27; *Atlantic & P. Tel. Co.* v. *Philadelphia*, 190 U. S. 160, 163; *Kehrer* v. *Stewart*, 197 U. S. 60, 65.

*Mr. Elliott W. Major*, Attorney General of the State of Missouri, with whom *Mr. John M. Atkinson* was on the brief, for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an indictment in the Criminal Court of Jackson County, Missouri, against the defendants in error Brodnax and Essex. It is based on a statute of Missouri, approved March 8th, 1907, (Mo. Sess. Acts, 1907, pp. 392–393; Mo. Rev. Stat., 1909, §§ 10228, 10229 and 10230), which declares it to be "unlawful for any corporation, association, copartnership or person to keep, or cause to be kept, in this State, any office, store or other place wherein is permitted the buying or selling the shares of stocks or bonds of any corporation, or petroleum, cotton, grain, provisions or other commodities, either on margins or otherwise, where the same is not at the time actually paid for and delivered, without at the time of the sale the seller shall cause to be made a complete record of the thing sold, the purchaser and the time of delivery in a book kept for that purpose; and at the time the seller shall deliver to the purchaser a written or printed memorandum of said sale, on which he shall place, or cause to be placed, a stamp of the value of twenty-five cents, which the seller shall purchase of the State Auditor, and have on hand before making such sale; and it shall be the duty of the State Auditor, upon the passage of this act, to have printed or engraved stamps for this purpose, of such design as he may select; and on application and

payment for said stamps, to immediately furnish the same
to the applicants applying therefor: Provided, further,
and it shall be unlawful for the purchaser to receive the
memoranda aforesaid until it bears the stamp above pro-
vided for.  § 2. The fund arising from the sale of the
stamps provided for in section one of this act shall, in
the hands of the State Auditor, constitute a road fund;
and it shall be the duty of the said Auditor to distribute
said fund, annually, to the counties in the State and the
city of St. Louis, in the same proportion and in like man-
ner as the State school funds are now distributed by him.
§ 3. Any person, whether acting individually or as a
member, or as an officer, agent or employé of any cor-
poration, association or copartnership, who shall be guilty
of violating any of the provisions of section one, shall,
upon conviction thereof, be fined in any sum not less than
fifty, nor more than one thousand dollars, and in addi-
tion thereto may be imprisoned in the county or city jail
for a period of not less than thirty days, nor to exceed
one year."

The indictment charges that the defendants, being
officers and agents of the Board of Trade of Kansas City,
Missouri, did, at a time specified, willfully and unlaw-
fully keep and cause to be kept a *place* commonly called
the trading floor of the Board of Trade of Kansas City,
wherein was permitted the buying and selling of grain,
provisions and other commodities, on margins and other-
wise, and where at the time of such sales, so permitted
the grain, provisions and other commodities so sold, were
not actually paid for and delivered, and at such time and
place the sellers, or any of them, of the grain, provisions
and other commodities, so sold on margins and otherwise,
did not then and there cause to be made a complete record
of the commodities sold and the time of delivery in a book
kept for that purpose, and at said time and place neither
the sellers, nor any of them, delivered to the purchasers

a written or printed memoranda of said sales, on which they, the sellers, or any of them, had placed or caused to be placed a stamp of the value of twenty-five cents, which they had purchased of the State Auditor and had on hand before making such sales; contrary to the statutes, etc.

The defendants demurred to the indictment on the ground, among others, that the statute was in violation of the Fourteenth Amendment, as well as of the commerce provision of the Constitution of the United States. The demurrer was overruled and the defendants excepted. A jury was waived, and the case was tried by the court.

Before the introduction of evidence the defendants objected to any proof, resting their objection upon these grounds: 1. That the statute was discriminatory, abridged the privileges and immunities of citizens of the United States, deprived defendants of their property without due process of law, and denied to them the equal protection of the law, contrary to the provisions of the Fourteenth Amendment of the Constitution of the United States. 2. That it was an unwarranted attempt to regulate interstate commerce.

The objection was also made that the statute was in violation of certain alleged provisions of the Constitution of Missouri. But with the latter ground we have, for obvious reasons, no concern on this writ of error from the state court. The above objections to the evidence were overruled, the defendants duly excepting.

For the purpose of the case, and subject to such objections as might be thereafter stated, facts were admitted which brought the case within the provisions of the statute and the averments of the indictment.

The defendant objected to these facts as incompetent, and inconsistent with the Constitutions both of the United States and of Missouri. The objections were overruled and the defendant excepted. To the above statement

of admitted facts this was added: "A substantial part' of the sales aforesaid being of grain, provisions and other commodities which were at the time of sale in course of transportation as articles of interstate commerce." The State objected to the facts just stated as incompetent and irrelevant. The objection was overruled, and the State excepted.

The result of the trial was a judgment that the defendants were guilty, and they were fined each $50. Motions for a new trial and for the arrest of judgment having been severally denied, the case was taken by appeal to the Supreme Court of Missouri, where the judgment of the trial court was affirmed.

The assignments of error present the same questions of constitutional law that were raised by the defendants' demurrer and objections to evidence.

The words of the statute show that the keeping of a *place* where corporate stocks and bonds,. as well as grains, provisions and other commodities were bought and sold, but not paid for at the time, without a complete record of the transaction (including a minute of the time of delivery) in a book kept for that purpose, and without the purchaser receiving a printed or written memorandum of the sale, needed to be regulated, so as to protect the public against unfair or fraudulent practices that might result to the injury or inconvenience of the general public. We are not prepared to hold that the State in this matter has exceeded the bounds of reason, or has legislated beyond the necessities of the case, or has arbitrarily interfered with the course of ordinary business among its people. While it is the duty of the Federal courts, if their jurisdiction be lawfully invoked, to see to it that the constitutional rights of the citizen are not infringed by the State, or by its authorized agents, they should not strike down an enactment or regulation adopted by the State under its police power, unless it be clear that the declara-

tion of public policy contained in the statute is plainly in violation of the Federal Constitution. Much may be done by a State under its police power which many may regard as an unwise exertion of governmental authority. But the Federal courts have no power to overthrow such local legislation, simply because they do not approve it or because they deem it unwise or inexpedient. What we have said in *House* v. *Mayes, ante,* p. 270, as to the nature and extent of the police power of the State, is applicable to this case, and need not be here repeated.

Suffice it, on this point to adjudge, as we now do, that the Federal Constitution does not prevent the enforce-ment by the State of the provision making it unlawful to keep or cause to be kept in the State an office, store, or *place,* where things are omitted to be done which the statute requires to be done at the time bonds and stocks and commodities are sold and bought *in such place.* The defendants were indicted and found guilty of keeping and causing to be kept such a *place* as the statute forbade to be kept or caused to be kept. We do not perceive that any right secured by the Fourteenth Amendment is or has been thereby violated. We could not adjudge otherwise without declaring that the statute was so unreasonable and so far beyond the necessities of the case as to be deemed a purely arbitrary interference with lawful business transactions. We are unwilling to so adjudge. Much was said at bar about the "liberty of contract." In a large sense every person has that liberty. It is secured by the provision in the Federal Constitution, forbidding a State to deprive any person of liberty or property without due process of law. But the Federal Constitution does not confer a liberty to disregard regulations as to the conduct of business which the State lawfully establishes for all within its jurisdiction.

It is contended that the statute is in violation of the Fourteenth Amendment, in that the classification of sub-

jects within the limits of the authorities levying the
stamp tax is not a true classification. Construing the
statute the state court said: "In our opinion, this law
clearly embraces every class, whether it be corporation,
association, either voluntary or otherwise, partnership or
person which furnishes a *place* for dealing in sales of stocks,
bonds, etc., upon margins or otherwise, where the same is
not at the time actually paid for and delivered, and em-
braces all classes who may deal in such places so fur-
nished. It is clear that the character of business which is
treated of by the statute is fully recognized as a separate
and distinct business from all other classes. That the
statute embraces every class, whether it be corporation,
association, partnership or person who may furnish a
place or who may deal in transactions in such places,
there can be, in our opinion, no sort of doubt; therefore
we conclude that so far as the class of persons to whom
this law is made applicable, whether natural or artificial,
this statute embraces the entire class and is not subject
to the objection that it singles out a part of a legal class
upon which the license or stamp tax is imposed and ex-
empts others of the same class. Manifestly the selection
of the business calling and the class pursuing such calling
were proper and appropriately selected by the legisla-
ture of this State in dealing with that subject." Of course,
we take the statute as a local law to mean what the court
says it means. Nor is there any force in the objection
that the classification, as shown by the statute, is arbi-
trary and unreasonable. The same methods and means
are applied equally to all of the same class. *Kentucky
R. R. Tax Cases*, 115 U. S. 321, 337; *Magoun* v. *Illinois
Trust & Savings Bank*, 170 U. S. 283; *Barbier* v. *Connolly*,
113 U. S. 27, 32.

Again, it is said that the statute, by its necessary op-
eration, is a regulation of interstate commerce. Not so.
It might suffice, in the present case, to say, that under

the facts admitted there is no reason whatever to invoke the commerce clause of the Federal Constitution. All that the defendant offered to show in this connection was that a substantial part of the sales referred to were of grain, provisions and other commodities which were at the time of sale in course of transportation as articles of interstate commerce. With this state of facts and *no more before it* the Supreme Court of the State said: "The requirements of the statute now under consideration have no bearing or influence whatever upon property sold. It is addressed to those furnishing the *places* as well as those who deal in the transaction *in such places.* In other words, in sales of property in the manner and *at the places pointed out* by the statute it is required, where a sale is made in the manner contemplated by that statute that the seller shall make a memorandum of such sale and place upon such memorandum a twenty-five cent stamp. We repeat that transactions of this character have no influence whatever upon commerce between different States, and, as was in substance said by the Supreme Court of the United States [*Hatch* v. *Reardon,* 204 U. S. 152], sales of this character do not contemplate or have anything to do with the transportation of property from one State to another, as in the drummer cases, and the mere fact that the parties to such sale, or either one of them, happen to be a resident of another State, in no way, legally or practically, affects the transaction and falls far short of subjecting such transaction to condemnation for the reason that it interferes with interstate commerce. Our conclusion upon this proposition is that this statute in no way interferes with interstate commerce, and should not be held invalid for that reason." We add that the indictment deals with the *place* where sales, such as the statute describes, are made. The offense is complete under the statute, by the keeping of such a place, and that occurs before any question of in-

terstate commerce could arise, so far as this record discloses.

We do not perceive that any error of law was committed by the state court, and its judgment is

*Affirmed.*