WRIGLEY PHARMACEUTICAL CO. et al. v. CAMERON, Commissioner of Banking, et al.

(District Court, M. D. Pennsylvania. December 27, 1926.)

No. 481.

1. Courts ⬿303(2)—Federal court has jurisdiction of suit by citizen of one state to enjoin officers of other state from enforcing unconstitutional law (Const. Amend. 11).

Federal courts have jurisdiction of suits by citizens of one state to enjoin officers of another from enforcing unconstitutional statutes, such not being suits against state, forbidden by Const. Amend. 11.

2. Courts ⬿303(2)—Citizens of another state may sue state officers to enjoin unconstitutional law or illegal application thereof (Const. Amend. 11).

Notwithstanding Const. Amend. 11, suit by citizens of another state may be prosecuted against state officer to enjoin enforcement of an unconstitutional enactment, or illegal application of such enactment, by officers of state.

3. Courts ⬿262(4)—Citizens of another state held entitled to maintain action in equity to restrain state officers from enforcing law.

Citizens of another state held entitled to maintain bill in equity to restrain state officers from enforcing provisions of Pennsylvania Securities Act (Pa. St. Supp. 1924, §§ 19867a1–19867a36), as not having adequate remedy at law.

4. Equity ⬿46—Remedy at law, to defeat equity jurisdiction, must be complete, practical, and efficient.

To defeat jurisdiction of equity on ground of adequate remedy at law, remedy at law must be as complete, practical, and efficient to ends of justice, and its prompt administration, as remedy in equity.

5. Courts ⬿262(2)—Remedy at law to preclude jurisdiction of federal court of equity must be remedy on law side of federal court.

Remedy at law, which will preclude bringing of suit in federal court of equity, must be remedy on law side of federal court, and not remedy in state courts.

6. Commerce ⬿63—Pennsylvania law regulating sale of securities held not unlawful interference with interstate commerce. (Pennsylvania Securities Act [Pa. St. Supp. 1924, §§ 19867a1–19867a36]).

Pennsylvania Securities Act (Pa. St. Supp. 1924, §§ 19867a1–19867a36), being a police measure intended to prevent fraud in sale of securities, held a reasonable exercise of police power, and not unlawful interference with interstate commerce.

7. Commerce ⬿12—State, under police powers, cannot regulate interstate commerce.

State cannot, under cover of exercising its police powers, undertake what amounts essentially to regulation of interstate commerce, or impose direct burden thereon.

8. Commerce 12—Reasonable local police regulation, not conflicting with federal legislation, is not invalid, because incidentally affecting interstate commerce.

When local police regulation has real relation to suitable protection to people of state, and is reasonable in its requirements, it is not invalid because incidentally affecting interstate commerce, providing it does not conflict with federal legislation.

9. Action ⬿62—Suit to enjoin state officers from enforcing law held premature, where intention to interfere with interstate commerce was not evident.

Suit in federal court to enjoin state officers from enforcing law held premature, where court could not determine that intention of state authorities was to undertake direct interference with interstate commerce.

In Equity. Suit by the Wrigley Pharmaceutical Company and others against Peter G. Cameron, Commissioner of Banking of the Commonwealth of Pennsylvania, and others. On motion to dismiss the bill of complaint and dissolve a temporary restraining order. Motions sustained.

Joseph S. Clark, Paul C. Wagner, and Jay W. Sechler, all of Philadelphia, Pa., and William M. Curry, of Scranton, Pa., for plaintiffs.

George W. Woodruff, Atty. Gen., of Pennsylvania, and J. W. Brown, T. Ewing Montgomery, Warren C. Graham, Asst. Dist. Atty., and Samuel P. Rotan, Dist. Atty., all of Philadelphia, Pa., for defendants.

Before DAVIS, Circuit Judge, and CLARK and JOHNSON, District Judges.

JOHNSON, District Judge. On October 1, 1925, the plaintiffs filed their amended bill in equity to restrain the defendants, officers of the state of Pennsylvania, from instituting and prosecuting any civil or criminal actions against plaintiffs under the provisions of the Securities Act of Pennsylvania (Pa. St. Supp. 1924, §§ 19867a1–19867a36), on the ground that this act, as construed, applied, and attempted to be applied against the plaintiffs, is contrary to and in violation of the commerce clause of the Constitution of the United States, and in violation of the plaintiffs' right to engage in interstate commerce. From the statements of the amended bill of complaint the following facts appear:

The plaintiffs in the bill consist of the Wrigley Pharmaceutical Company, a Delaware corporation with an office and place of business in Atlantic City, N. J., William W. Wrigley, president of said corporation, a citizen of the state of Pennsylvania and an inhabitant of the city of Philadelphia, and Patrick Gallagher, vice president of said corporation, a citizen of the state of Pennsylvania, and an inhabitant and resident of the city of Philadelphia. The defendants consist of Peter G. Cameron, commissioner of banking of the commonwealth of Pennsylvania, George W. Woodruff, Attorney General of the commonwealth of Pennsylvania, and Samuel P. Rotan, district attorney of the county of Philadelphia in the commonwealth of Pennsylvania.

The Wrigley Company has been engaged since January 1, 1925, in the sale of tooth paste and its treasury stock to the citizens and inhabitants residing in the commonwealth of Pennsylvania, by use of circulars sent through the mails from the Atlantic City office of the company to the residents of the commonwealth of Pennsylvania. On October 3, 1925, Peter G. Cameron, commissioner of banking of Pennsylvania, through his deputies, as provided for in the Securities Act of June 14, 1923, issued a subpœna to William W. Wrigley and Patrick Gallagher, two of the plaintiffs in this bill, requiring their presence before the commissioner of banking or his deputies in their office in Philadelphia, October 9, 1925, to be examined as provided under section 20 of the said Securities Act. (Pa. St. Supp. 1924, § 19867a20).

On October 9th counsel for William W. Wrigley and Patrick Gallagher appeared and stated the individuals who had been served with subpœnas would not be present, for the reason that they had committed no acts in violation of the said Securities Act, claiming that all of the acts done by the said Wrigley Company were interstate commerce, and not subject to investigation by the commissioner of banking of Pennsylvania. Counsel for William W. Wrigley and Patrick Gallagher were informed by the deputy commissioner of banking that, unless the said individuals appeared in response to the subpœna, the commissioner of banking would resort to the court of common pleas of Philadelphia county, as provided for in section 20 of the said Securities Act, to compel the said individuals to appear and testify, or show cause why the provisions of the subpœna should not be obeyed.

The bill also alleges that the plaintiffs, under the interpretation placed on the said Securities act by the commissioner of banking, would be subjected to a multiplicity of suits, both civil and criminal, in enforcement of the provisions of the act against them, and in the prosecuting of them for alleged violation thereof, and that such actions would irreparably damage the plaintiffs' business, reputation, and good will.

On November 1, 1925, the defendants, by their solicitors, filed an amended motion to dismiss plaintiffs' bill of complaint, assigning a number of reasons therefor, and on November 7, 1925, Samuel P. Rotan, district attorney of the county of Philadelphia, Pa., moved the court to dissolve the temporary restraining order.

From the allegations in the bill of complaint, and the motions to dismiss, three questions arise: The jurisdiction of this court; the adequacy of a remedy at law; and whether the said Securities Act of Pennsylvania is a violation of the Constitution of the United States, and its application to the plaintiffs an illegal interference with interstate commerce. These questions will be considered in their order.

[1, 2] We are satisfied the court has jurisdiction in this case. The defendants contend that the plaintiffs' procedure in this case is in violation of the Eleventh Amendment to the Constitution of the United States, which prohibits citizens of any foreign state from prosecuting a suit in law or equity against one of the United States, and that no federal question is raised. But this is not a suit against one of the states, but an attempt to prevent the officers of Pennsylvania from enforcing an unconstitutional enactment of the state of Pennsylvania, or an illegal application of such enactment. While no action can be prosecuted against one of the United States by citizens of another state, suits may be prosecuted against the officers of such

state for the enforcement of an unconstitutional enactment of such state, or an illegal application of such enactment by the officers of the state.

This question was decided against the defendants' contention in Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, where, on page 388, 14 S. Ct. 1047, 1050 (38 L. Ed. 1014), Mr. Justice Brewer, delivering the opinion of the court, said:

"We are met at the threshold with an objection that this is in effect a suit against the state of Texas, brought by a citizen of another state, and therefore, under the Eleventh Amendment to the Constitution, beyond the jurisdiction of the federal court. The question as to when an action against officers of a state is to be treated as an action against the state has been of late several times carefully considered by this court, especially in the cases of In re Ayers, 123 U. S. 443, 8 S. Ct. 164 [31 L. Ed. 216] by Mr. Justice Matthews, and Pennoyer v. McConnaughy, 140 U. S. 1, 11 S. Ct. 699 [35 L. Ed. 363] by Mr. Justice Lamar. In the former of these cases it was said (page 505 [8 S. Ct. 183]):

" 'To secure the manifest purposes of the constitutional exemption guaranteed by the Eleventh Amendment requires that it should be interpreted, not literally and too narrowly, but fairly, and with such breadth and largeness as effectually to accomplish the substance of its purpose. In this spirit it must be held to cover, not only suits brought against a state by name, but those also against its officers, agents, and representatives, where the state, though not named as such, is nevertheless the only real party against which alone in fact the relief is asked, and against which the judgment or decree effectively operates.'

"And in the latter (page 9 [11 S. Ct. 701]):

" 'It is well settled that no action can be maintained in any federal court by the citizens of one of the states against a state, without its consent, even though the sole object of such suit be to bring the state within the operation of the constitutional provision, which provides that "no state shall pass any law impairing the obligation of contracts." This immunity of a state from suit is absolute and unqualified, and the constitutional provisions securing it is not to be so construed as to place the state within the reach of the process of the court. Accordingly it is equally well settled that a suit against the officers of a state, to compel them to do the acts which constitute a performance by it of

its contracts, is, in effect, a suit against the state itself. In the application of this latter principle, two classes of cases have appeared in the decisions of this court, and it is in determining to which class a particular case belongs that differing views have been presented.

" 'The first class is where the suit is brought against the officers of the state, as representing the state's action and liability, and thus making it, though not a party to the record, the real party against which the judgment will so operate as to compel it to specifically perform its contracts. In re Ayers, 123 U. S. 443 [8 S. Ct. 164, 31 L. Ed. 216]; Louisiana v. Jumel, 107 U. S. 711 [2 S. Ct. 128, 27 L. Ed. 448]; Antoni v. Greenhow, 107 U. S. 769. [2 S. Ct. 91, 27 L. Ed. 468]; Cunningham v. Macon & Brunswick Railroad, 109 U. S. 446 [3 S. Ct. 292, 609, 27 L. Ed. 992]; Hagood v. Southern, 117 U. S. 52 [6 S. Ct. 608, 29 L. Ed. 805].

" 'The other class is where a suit is brought against defendants who, claiming to act as officers of the state, and under the color of an unconstitutional statute, commit acts of wrong and injury to the rights and property of the plaintiff acquired under a contract with the state. Such suit, whether brought to recover money or property in the hands of such defendants, unlawfully taken by them in behalf of the state, or for compensation in damages, or, in a proper case, where the remedy at law is inadequate, for an injunction to prevent such wrong and injury, or for a mandamus, in a like case, to enforce upon the defendant the performance of a plain, legal duty, purely ministerial, is not, within the meaning of the Eleventh Amendment, an action against the state. Osborn v. Bank of the United States, 9 Wheat. 738 [6 L. Ed. 204]; Davis v. Gray, 16 Wall. 203 [21 L. Ed. 447]; Tomlinson v. Branch, 15 Wall. 460 [21 L. Ed. 189]; Litchfield v. Webster County, 101 U. S. 773 [25 L. Ed. 925]; Allen v. Baltimore & Ohio Railroad, 114 U. S. 311 [5 S. Ct. 925, 962, 29 L. Ed. 200]; Board of Liquidation v. McComb, 92 U. S. 531 [23 L. Ed. 623]; Poindexter v. Greenhow, 114 U. S. 270 [5 S. Ct. 903, 962, 29 L. Ed. 185].' "

The application of the Eleventh Amendment to the Constitution of the United States is clearly set forth in Hopkins v. Clemson College, 221 U. S. 636, where on page 642, 31 S. Ct. 654, 656 (55 L. Ed. 890, 35 L. R. A. [N. S.] 243), it is said:

"With the exception named in the Constitution, every state has absolute immunity

from suit. Without its consent it cannot be sued in any court, by any person, for any cause of action whatever. And, looking through form to substance, the Eleventh Amendment has been held to apply, not only where the state is actually named as a party defendant on the record, but where the proceeding, though nominally against an officer, is really against the state, or is one to which it is an indispensable party. No suit, therefore, can be maintained against a public officer which seeks to compel him to exercise the state's power of taxation, or to pay out its money in his possession on the state's obligations, or to execute a contract, or to do any affirmative act which affects the state's political or property rights. Cunningham v. Macon & Brunswick R. R., 109 U. S. 446 [3 S. Ct. 292, 609, 27 L. Ed. 992]; North Carolina v. Temple, 134 U. S. 22 [10 S. Ct. 509, 33 L. Ed. 849]; Louisiana v. Steele, 134 U. S. 230 [10 S. Ct. 511, 33 L. Ed. 891]; Louisiana v. Jumel, 107 U. S. 711 [2 S. Ct. 128, 27 L. Ed. 448]; Pennoyer v. McConnaughy, 140 U. S. 1 [11 S. Ct. 699, 35 L. Ed. 363]; In re Ayers, 123 U. S. 443 [8 S. Ct. 164, 31 L. Ed. 216]; Hans v. Louisiana, 134 U. S. 1 [10 S. Ct. 504, 33 L. Ed. 842]; Harkrader v. Wadley, 172 U. S. 148 [19 S. Ct. 119, 43 L. Ed. 399]; Hagood v. Southern, 117 U. S. 52, 70 [6 S. Ct. 608, 29 L. Ed. 805].

"But immunity from suit is a high attribute of sovereignty—a prerogative of the state itself—which cannot be availed of by public agents when sued for their own torts. The Eleventh Amendment was not intended to afford them freedom from liability in any case where, under color of their office, they have injured one of the state's citizens. To grant them such immunity would be to create a privileged class, free from liability for wrongs inflicted or injuries threatened. Public agents must be liable to the law, unless they are to be put above the law; for how can the principles of individual liberty and right be maintained if, when violated, the judicial tribunals are forbidden to visit penalties upon individual defendants, * * * whenever they interpose the shield of the state. * * * The whole frame and scheme of the political institutions of this country, state and federal, protest against extending to any agent the sovereign's exemption from legal process. Poindexter v. Greenhow, 114 U. S. 270, 291 [5 S. Ct. 903, 962, 29 L. Ed. 185]."

In Savage v. Jones, 225 U. S. 501, 32 S. Ct. 715, 56 L. Ed. 1182, where appellant attacked as unconstitutional a state statute under which the sale of his product was interfered with by the state officer enforcing the statute, and a general demurrer for want of equity was sustained, it was held that the Supreme Court of the United States had jurisdiction of the appeal; nor was the appeal dismissed because the bill in one of its allegations asserted that complainant's product was not one of those specified in the act, if, as in that case, the bill also alleged that the proper state officer had construed the state statute as applicable thereto.

[3-5] The bill in this case cannot be dismissed on the ground that the plaintiffs have an adequate remedy at law. To defeat the jurisdiction of equity on the ground of an adequate remedy at law, the remedy at law must be as complete, practical, and efficient to the ends of justice and its prompt administration as a remedy in equity. Fredenberg et al. v. Whitney (D. C.) 240 F. 819. "The 'remedy at law' which will prevent the bringing of a suit in a federal court of equity must be a remedy on the law side of the federal court, and not a remedy in the state courts." Risty v. Chicago, R. I. & P. Ry. Co. (C. C. A.) 297 F. 710.

"Where, if an assessment against a railway company by a state tax commission was allowed to be certified down to and extended by the various counties and cities who were to collect it, the company, to avail itself of its right to sue at law for recovery of the portion claimed to be unjustly exacted, would be required to sue in 35 different counties, the remedy at law is inadequate, and does not prevent a suit for an injunction." Chicago & N. W. R. Co. v. Eveland et al. (D. C.) 285 F. 425.

In Kennington et al. v. Palmer et al., 255 U. S. 100, 41 S. Ct. 303, 65 L. Ed. 528, a bill to enjoin criminal prosecutions against dealers in wearing apparel under section 4 of the food Control Act, as amended (Comp. St. § 3115⅛ff), was upheld, and in writing the opinion Mr. Chief Justice White said:

"As it is no longer open to deny that the averments of unconstitutionality which were relied upon, if well founded, justified equitable relief under the bill, and because the opinion in the Cohen Case has conclusively settled that they were well founded, it follows that the court below was wrong, and its decree must be and it is reversed, and the case remanded for further proceedings in conformity with this opinion." Also see Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F,

514, Ann. Cas. 1917C, 643, and Caldwell v. Sioux Falls Stock Yards Co., 242 U. S. 559, 37 S. Ct. 224, 61 L. Ed. 493.

[6] The Pennsylvania Securities Act is a police measure, intended to prevent fraud in the sale of securities in Pennsylvania, and is a reasonable exercise of the police power of the state, and is not an unlawful interference with interstate commerce, and its control or effect on interstate commerce is merely incidental. This position is clearly supported in Hall v. Geiger-Jones Co., 242 U. S. 539, on page 549, 37 S. Ct. 217, 220 (61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643). Mr. Justice McKenna, delivering the opinion of the court, explained the provisions of the so-called Blue Sky Law of Ohio (Gen. Code, § 6373—2 et seq.) as follows:

"The question then is: Is the statute of Ohio within the principles declared? The statute is a restraint upon the disposition of certain property, and requires dealers in securities evidencing title to or interest in such property to obtain a license—a requirement simple enough in itself, and yet of itself asserted to be an illegal control of a private business, made especially, so by the conditions which are imposed. These conditions, summarized, are as follows:

"To obtain the license there must be filed with superintendent of banks and banking (termed in the act 'commissioner') application for such license, together with information in such form as the commissioner shall determine, setting forth:

"'(a) The names and addresses of the directors and officers if such applicant be a corporation or association, and of all partners if it be a partnership, and of the person if the appellant be an individual, together with names and addresses of all agents of such applicant assisting in the disposal of such securities;

"'(b) Location of the applicant's principal office, and of his principal office in the state, if any;

"'(c) The general plan and character of the business of said applicant, together with references which the 'commissioner' shall confirm by such investigation as he may deem necessary, establishing the good repute in business of such applicant, directors, officers, partners, and agents.

"'If the applicant be a corporation organized under the laws of any other state, territory, or government, or have its principal place of business therein, it shall also file a copy of its articles of incorporation, certified by the proper officer of such state, territory, or government, and of its regulations and by-laws, and if it be an unincorporated association, a certified copy of its articles of association, or deed of settlement.'

"The applicant is also required to file a written instrument irrevocably consenting to be sued in a particular county, and, if personal service there cannot be had, consenting to service upon the sheriff of the county. It is also provided that all of the applications shall be published in a daily newspaper, and, if the commissioner be satisfied that the applicant is of good business repute, he shall, upon payment of certain fees, register the applicant as a licensed dealer in securities. Pending disposition of the application, temporary permission to transact business may be given. Yearly renewals of the licenses are provided for.

"The commissioner may revoke a license upon ascertaining that the licensee: (a) Is of bad business repute; (b) has violated any provision of the act; or (c) has engaged, or is about to engage, under favor of such license, in illegitimate business or fraudulent transactions."

On page 557 [37 S. Ct. 223], Judge McKenna continued:

"The next contention of the appellees is that the law under review is a burden on interstate commerce, and therefore contravenes the commerce clause of the Constitution of the United States. There is no doubt of the supremacy of the national power over interstate commerce. Its inaction, it is true, may imply prohibition of state legislation; but it may imply permission of such legislation. In other words, the burden of the legislation, if it be a burden, may be indirect and valid, in the absence of the assertion of the national power. So much is a truism; there can only be controversy about its application. The language of the statute is: 'Except as otherwise provided in this act, no dealer shall, within this state, dispose' of certain securities 'issued or executed by any private or quasi public corporation, copartnership or association (except corporations not for profit) * * * without first being licensed so to do as hereinafter provided.'

"The provisions of the law, it will be observed, apply to dispositions of securities within the state, and while information of those issued in other states and foreign countries is required to be filed (sections 6373—9) they are only affected by the requirement of a license of one who deals in them within the state. Upon their transpor-

tation into the state there is no impediment —no regulation of them or interference with them after they get there. There is the exaction only that he who disposes of them there shall be licensed to do so, and this only that they may not appear in false character and impose an appearance of a value which they may not possess; and this certainly is only an indirect burden upon them as objects of interstate commerce, if they may be regarded as such. It is a police regulation strictly, not affecting them until there is an attempt to make disposition of them within the state. To give them more immunity than this is to give them more immunity than more tangible articles are given; they having no exemption from regulations the purpose of which is to prevent fraud or deception. Such regulations affect interstate commerce in them only incidentally. Hatch v. Reardon, 204 U. S. 152 [27 S. Ct. 188, 51 L. Ed. 415, 9 Ann. Cas. 736]; Ware & Leland v. Mobile County, 209 U. S. 405 [28 S. Ct. 526, 52 L. Ed. 855, 14 Ann. Cas. 1031]; Engel v. O'Malley, 219 U. S. 128 [31 S. Ct. 190, 55 L. Ed. 128]; Brodnax v. Missouri, 219 U. S. 285 [31 S. Ct. 238, 55 L. Ed. 219]; Banker Brothers Co. v. Pennsylvania, 222 U. S. 210 [32 S. Ct. 38, 56 L. Ed. 168]; Savage v. Jones, 225 U. S. 501 [32 S. Ct. 715, 56 L. Ed. 1182]; Standard Stock Food Co. v. Wright, 225 U. S. 540 [32 S. Ct. 784, 56 L. Ed. 1197]; Trading Stamp Cases, supra [Rast v. Van Deman & L. Co., 240 U. S. 342, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; Tanner v. Little, 240 U. S. 369, 36 S. Ct. 379, 60 L. Ed. 691; Pitney v. Washington, 240 U. S. 387, 391, 36 S. Ct. 385, 60 L. Ed. 703, 706]. With these cases International Text-Book Co. v. Pigg, 217 U. S. 91 [30 S. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103]; Buck Stove & Range Co. v. Vickers, 226 U. S. 205 [33 S. Ct. 41, 57 L. Ed. 189], and the Lottery Case, 188 U. S. 321 [23 S. Ct. 321, 47 L. Ed. 492], are not in discordance.

"We might, indeed, ask: When do the designated securities cease migration in interstate commerce and settle to the jurisdiction of the state? Material things, choses in possession, pass out of interstate commerce when they emerge from the original package. Do choses in action have a longer immunity? It is to be remembered that, though they may differ in manner of transfer, they are in the same form in the hands of the purchaser as they are in the hands of the seller, and in the hands of both as they are brought into the state. We ask again:

Do they never pass out of interstate commerce? Have they always the freedom of the state? Is there no point of time at which the state can expose the evil that they may mask? Is anything more necessary * * * than that they be kept free when in actual transportation, subjected to the jurisdiction of the state only when they are attempted to be sold to the individual purchaser? The questions are pertinent, the answer to them one way or the other, of consequence; but we may pass them, for regarding the securities as still in interstate commerce after their transportation to the state is ended and they have reached the hands of dealers in them, their interstate character is only incidentally affected by the statute."

[7, 8] In Savage v. Jones, 225 U. S. 501, on page 524, 32 S. Ct. 715, 722 (56 L. Ed. 1182), Mr. Justice Hughes clearly stated the law which we may apply to this case:

"The state cannot, under cover of exerting its police powers, undertake what amounts essentially to a regulation of interstate commerce, or impose a direct burden upon that commerce. Railroad Co. v. Husen, 95 U. S. 465, 475 [24 L. Ed. 527]; Walling v. Michigan, 116 U. S. 446 [6 S. Ct. 454, 29 L. Ed. 691]; Bowman v. Chicago, etc., Ry. Co., 125 U. S. 465 [8 S. Ct. 689, 1062, 31 L. Ed. 700]; Leisy v. Hardin, 135 U. S. 100 [10 S. Ct. 681, 34 L. Ed. 128]; Minnesota v. Barber, 136 U. S. 313 [10 S. Ct. 862, 34 L. Ed. 455]; Brimmer v. Rebman, 138 U. S. 78 [11 S. Ct. 213, 35 L. Ed. 862]; Scott v. Donald, 165 U. S. 58 [17 S. Ct. 265, 41 L. Ed. 632]; Schollenberger v. Pennsylvania, 171 U. S. 1, 13 [18 S. Ct. 757, 43 L. Ed. 49]; Houston & Texas Central R. R. Co. v. Mayes, 201 U. S. 321 [26 S. Ct. 491, 50 L. Ed. 772]; Atlantic Coast Line v. Wharton, 207 U. S. 328 [28 S. Ct. 121, 52 L. Ed. 230]; Adams Express Co. v. Kentucky, 214 U. S. 218 [29 S. Ct. 633, 53 L. Ed. 972]. But when the local police regulation has real relation to the suitable protection of the people of the state, and is reasonable in its requirements, it is not invalid because it may incidentally affect interstate commerce, provided it does not conflict with legislation enacted by Congress pursuant to its constitutional authority. Plumley v. Massachusetts, 155 U. S. 461 [15 S. Ct. 154, 39 L. Ed. 223]; Hennington v. Georgia, 163 U. S. 299, 317 [16 S. Ct. 1086, 41 L. Ed. 166]; N. Y., N. H. & H. Ry. Co. v. New York, 165 U. S. 628 [17 S. Ct. 418, 41 L. Ed. 853]; Chicago, M. & St. P. Ry. Co. v. Solan, 169 U. S. 133 [18 S. Ct. 289, 42 L. Ed. 688]; Missouri, Kansas

& Texas Ry. Co. v. Haber, 169 U. S. 613 [18 S. Ct. 488, 42 L. Ed. 878]; Patapsco Guano Co. v. North Carolina, 171 U. S. 345 [18 S. Ct. 862, 43 L. Ed. 191]; Reid v. Colorado, 187 U. S. 137 [23 S. Ct. 92, 47 L. Ed. 108]; Pennsylvania R. R. Co. v. Hughes, 191 U. S. 477 [24 S. Ct. 132, 48 L. Ed. 268]; Crossman v. Lurman, 192 U. S. 189 [24 S. Ct. 234, 48 L. Ed. 401]; Mclean v. Denver & Rio Grande R. R. Co., 203 U. S. 38, 50 [27 S. Ct. 1, 51 L. Ed. 78]; Asbell v. Kansas, 209 U. S. 251, 254–256 [28 S. Ct. 485, 52 L. Ed. 778, 14 Ann. Cas. 1101]; Chicago, R. I. & P. Ry. Co. v. Arkansas, 219 U. S. 453 [31 S. Ct. 275, 55 L. Ed. 290].

"In Plumley v. Massachusetts, a law of that commonwealth was sustained which had been passed 'to prevent deception in the manufacture and sale of imitation butter.' The article, for the sale of which the plaintiff in error was convicted in the state court, had been received by him from the manufacturers in Illinois, as their agent, and had been sold in Massachusetts in the original package. The court said (supra, pages 468, 472 [15 S. Ct. 156]), referring to the purpose and effect of the statute: 'He is only forbidden to practice, in such matters, a fraud upon the general public. The statute seeks to suppress false pretenses and to promote fair dealing in the sale of an article of food. It compels the sale of oleomargarine for what it really is, by preventing its sale for what it is not. Can it be that the Constitution of the United States secures to any one the privilege of manufacturing and selling an article of food in such manner as to induce the mass of people to believe that they are buying something which, in fact, is wholly different from that which is offered for sale? Does the freedom of commerce among the states demand a recognition of the right to practice a deception upon the public in the sale of any articles, even those that may have become the subject of trade in different parts of the country? * * * Such legislation may, indeed, indirectly or incidentally affect trade in such products transported from one state to another state. But that circumstance does not show that laws of the character alluded to are inconsistent with the power of Congress to regulate commerce among the states.' "

In Shafer v. Farmers' Grain Co., 268 U. S. 189, 45 S. Ct. 481, 69 L. Ed. 909, Mr. Justice Van Devanter, delivering the opinion of the court, said on page 199 (45 S. Ct. 485):

"The decisions of this court respecting the validity of state laws challenged under the commerce clause have established many rules covering various situations. Two of these rules are specially invoked here—one that a state statute enacted for admissible state purposes, and which affects interstate commerce only incidentally and remotely, is not a prohibited state regulation in the sense of that clause; and the other that a state statute, which by its necessary operation directly interferes with or burdens such commerce, is a prohibited regulation and invalid, regardless of the purpose with which it was enacted. These rules, although readily understood and entirely consistent, are occasionally difficult of application, as where a state statute closely approaches the line which separates one rule from the other. As might be expected, the decisions dealing with such exceptional situations have not been in full accord. Otherwise, the course of adjudication has been consistent and uniform."

From the above authorities it is clear that the Pennsylvania Securities Act cannot be attacked on the ground that it is an unlawful interference with interstate commerce.

[9] We might well further add that the plaintiffs' action here is premature, for the reason that it is impossible for this court to determine that it was the intention of the authorities of the state of Pennsylvania to undertake any direct interference with interstate commerce.

For the reason indicated under the third question involved, the motions to dismiss the plaintiffs' bill and to dissolve the preliminary injunction are sustained, and the interlocutory restraining order is discharged.