Raymond A. JAEGER, Appellant,

v.

Orville L. FREEMAN et al., Appellees.

No. 25748.

United States Court of Appeals
Fifth Circuit.

April 28, 1969.

William T. Gerard, Athens, Ga., for appellant.

Jack H. Weiner, Morton Hollander, Stephen R. Felson, Attys., Dept. of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., Floyd M. Buford, U. S. Atty., for appellees.

Before JOHN R. BROWN, Chief Judge, THORNBERRY, Circuit Judge, and TAYLOR, District Judge.

JOHN R. BROWN, Chief Judge:

In his complaint in the court below, appellant Jaeger sought reinstatement to his previous position as a government poultry inspector, together with back pay and various other relief. The District Judge dismissed Jaeger's complaint for failure to state a claim upon which relief could be granted. Since the controlling facts were fully revealed and the uncertainties so often present[1] were avoided altogether, the procedure was appropriate and the Trial Judge was substantively correct. We therefore affirm.

Dr. Jaeger was hired on June 5, 1966, as a veterinary poultry inspector for the Department of Agriculture Consumer and Marketing Service. His appointment was "career-conditional," *i. e.*, with a

---

1. *See e. g.*, Barber v. M/V Blue Cat, 5 Cir., 1967, 372 F.2d 626, 1969, A.M.C. 211.

one-year probationary period. Seven and one-half months later, in January 1967, the Agriculture Department notified Dr. Jaeger that he was being terminated from his position on February 3, 1967. In terminating his position as a professional fowl inspector, the termination letter stated that the Department's "decision [was] based on your use of foul and abusive language to subordinates while assigned relief duties at Bethlehem, Georgia, and for failure to follow instructions with respect to providing relief to Poultry Inspectors on the line." After exhausting his administrative remedies, Dr. Jaeger brought the present action.

His theory in the District Court and in his argument in this Court is based principally on the contention that the Government rules and regulations pertaining to probationary employees are violative of the constitutional guarantee of due process insofar as they permit summary dismissal of probationary employees without any kind of hearing. Highlighting the basic nature of his claim, it is significant that there is no contention either in the complaint or argument that the Government has failed to follow the applicable statute,[2] or rules and regulations.[3] This represents no tactical concession, for on this record Dr. Jaeger's dismissal for conduct following appointment and during probation was properly effected under applicable regulations when he was given a notice describing why he was being terminated and the effective date. See 5 C.F.R. § 315.804. After his dismissal, he appealed to the regional office of the Civil Service Commission. This appeal was denied, properly we think, on jurisdictional grounds under 5 C.F.R. § 315.-

2. The basic statute authorizes the issuance of special rules for a probationary period in this type of employment: "The President may prescribe rules which shall provide, as nearly as conditions of good administration warrant, that there shall be a period of probation before an appointment in the competitive service becomes absolute." 5 U.S.C.A. § 3321.

3. Pursuant to the statutory grant of power, the following regulations, among others, have been promulgated:
315.801—Probationary period; when required.
(a) The first year of service of an employee who is given a career or career-conditional appointment under this part is a probationary period * * *.
315.802—Length of probationary period.
(a) The probationary period required by § 315.801 is 1 year.
315.803—Agency action during probationary period (general).
The agency shall utilize the probationary period as fully as possible to determine the fitness of the employee and shall terminate his services during this period if he fails to demonstrate fully his qualifications for continued employment.
315.804—Termination of probationers for unsatisfactory performance or conduct.
When an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct.
    *    *    *    *    *
315.806—Appeal rights to the [Civil Service] Commission.
(a) Right of appeal. An employee is entitled to appeal to the Commission in writing from the agency's decision to terminate him under § 315.804 or § 315.805 only as provided in this section. The Commission's review does not include any matter except as provided in paragraphs (b) and (c) of this section.
(b) On discrimination. An employee whose termination is subject to the provisions of § 315.804 or § 315.805 may appeal on the ground that the action taken was based on political reasons not required by statute * * *.
(c) On improper procedure. A probationer whose termination is subject to § 315.805 [termination for conditions arising before appointment] may appeal on the ground that his termination was not effected in accordance with the procedural requirements of that section.
5 C.F.R. §§ 315.801(a), 315.802(a), 315.-803, 315.804, 315.806(a)–(c).

806(b). Subsequent appeal to the Board of Appeals and Review of the Civil Service Commission was also denied.

■■ We start with the proposition that due process does not in every instance require the Government to afford a trial-type hearing to an employee before discharging him. Cafeteria & Restaurant Workers Union Local 473, A.F.L.–C.I.O. v. McElroy, 1961, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230. See also Chafin v. Pratt, 5 Cir., 1966, 358 F.2d 349, 356–357, *cert. denied,* 1966, 385 U.S. 878, 87 S.Ct. 159, 17 L.Ed. 2d 105. Congress has not provided for a hearing in cases like the one before us, and in the view of this Court there are no compelling reasons for imposing a constitutional requirement of a hearing prior to the dismissal of probationary employees. We are fortified in this position by like decision of the First Circuit in its recent opinion in Medoff v. Freeman, 1 Cir., 1966, 362 F.2d 472. There is ample basis for Congress's concluding that a healthy Civil Service System affording genuine tenure and security to career employees would itself be jeopardized or weakened by denying the Government the benefit available in nearly all selective programs of testing the competency and capacity of the new employee during a fixed but limited probationary or trial period.

■■ The constitutional claim fails and since it is conceded that the proper procedures under the regulations were followed, the Agency's action cannot be set aside on this ground.

■■ Appellant, stressing principally Pelicone v. Hodges, 1963, 116 U.S. App.D.C. 32, 320 F.2d 754, urges also that we reject his discharge on the ground that the agency acted in an arbitrary or capricious manner. Thus far this Circuit has not claimed any such right of review, and apart from compliance with statutory-regulatory procedures we limit our review to the question whether there is any "departure from the required standard of procedural due process." Chiriaco v. United States, 5 Cir., 1964, 339 F.2d 588, 590. But the contention would here be unavailing. Even assuming that this Court could take cognizance of arbitrary or capricious action, the record here demonstrates that the challenged agency action was amply supported by the evidence and could not be considered arbitrary or capricious.

Dr. Jaeger fares no better with his contention that the Employee-Management Cooperation Agreement is applicable to this occurrence, and that the friction between the lay—that is, nonprofessional—poultry inspectors and Dr. Jaeger was a "grievance" under that agreement. Thus he claims that this grievance should have resulted in mediation, as provided for by the agreement, rather than in discharge.

The parties to the agreement in question are the Government and the union of lay poultry inspectors.[4] Article II provides that the agreement is applicable to "non-veterinarian, non-supervisory full-time Poultry Inspectors." Dr. Jaeger was, of course, both a veterinarian and a supervisor. Therefore, the contract obviously confers no enforceable rights on supervisory personnel who, like Dr. Jaeger, were not members of the union.

■ At this point Dr. Jaeger, aware that the management agreement was to protect non-professional employees from action by professional supervisors, tries to get the benefit of it by urging that the Government should have demanded that the employees offended or upset by Dr. Jaeger's language and manners seek a determination of this "grievance" under the machinery prescribed. But clearly this was the privilege of the employees, not a right accorded the object of their grievance.

4. Specifically, the Atlanta Area Office, Inspection Branch, Poultry Division, Consumer and Marketing Service of the Department of Agriculture and the Southeastern Council of Poultry Inspection Lodges, American Federation of Government Employees.

Nor did it deprive the Government of the right to exert its employer discipline against an offending employee without compelling dissatisfied employees to institute a grievance procedure to require the Government to do what it was willing to do without such pressure.

■ Likewise, there is no merit to Dr. Jaeger's argument that it was error not to follow the alternative grievance procedure set out in the Department of Agriculture's Personnel Manual. First, the manual expressly exempts from its terms appeals from "[p]robationary and trial period disqualifications". And, more important, the grievance provision of the manual, like that of the Management Cooperation Agreement, note 4 supra, was intended for the benefit of the employees and confers no enforceable rights on supervisory personnel.

Every contention, factual and legal, was assayed and found wanting. Denial of relief was proper.

Affirmed.