**Isaac LONDON, Plaintiff,**

v.

**FLORIDA DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES DIVISION OF FAMILY SERVICES, Defendant.**

**Civ. A. 1764.**

United States District Court,
N. D. Florida,
Pensacola Division.

May 12, 1970.

Vilma Martinez Singer, New York City, Theodore R. Bowers, Panama City, Fla., for plaintiff.

S. Strome Maxwell, Jacksonville, Fla., Michael Schwartz, Asst. Atty. Gen., and Earl Faircloth, Atty. Gen., Tallahassee, Fla., for defendant.

ARNOW, Chief Judge.

## MEMORANDUM DECISION

Involved here is a complaint of Plaintiff, Isaac London, attacking his transfer and subsequent dismissal as a case worker with the Department of Health and Rehabilitative Services of the State of Florida. The case has been tried before the Court without a jury. All evidence has been taken, arguments of counsel for the respective parties heard, and briefs filed by the parties considered.

Plaintiff brings suit under 42 U.S.C. Sections 1981 and 1983, alleging civil rights and First and Fourteenth Amendment violations. Initially, Plaintiff also sought to bring the action as a class suit, but during the progress of the litigation, that attempt of Plaintiff's was abandoned and was withdrawn, with no evidence proffered to justify such relief, and so such need not be considered by the Court.

Plaintiff was employed by the Department as a case worker from June 15, 1956, to March 4, 1966.

Under Florida law, determination respecting transfer or dismissal of a case worker such as Plaintiff is made initially by the District Welfare Board. A case worker dissatisfied with this determination may appeal to the State Merit System Council which, under the law, gives him, in effect, a trial de novo, making its own findings and determination. (Names of these respective state agencies have, since this suit commenced, been changed; the reference here is to the names as they existed at the time of the events in question and as they were referred to in arguments and briefs before the Court. For brevity, the District Welfare Board here involved is referred to as Board, the State Merit System Council as Council, and the overall State Welfare Department as Department.)

In the summer of 1965, Plaintiff was transferred, against his desire, from Okaloosa County, Florida, to Escambia County, Florida, by the Board. Being dissatisfied, he appealed to the Council, and it approved and directed the transfer. Thereafter, he commenced working as a case worker in Escambia County. He was, on March 4, 1966, permanently dismissed as a case worker, by the Board. Again, he took an appeal to the Council, and his dismissal was sustained, with it also finding he should be dismissed, and he was dismissed. Following that, this suit in this Court was brought.

Plaintiff charges that both his transfer and dismissal were motivated by racial prejudice, that they were in violation of his First Amendment right of freedom of speech, association and assembly, and that the actions of the Board and the Council in transferring and later dismissing him were arbitrary, capricious and unreasonable.

In addition, Plaintiff contends that, on appeal of his dismissal order, he was, by the Council, denied the right of discovery, with such denial being a denial of the right adequately to prepare a defense, in violation of the due process and equal protection clauses of the Fourteenth Amendment.

With reference to Plaintiff's contentions of transfer because of racial prejudice and in violation of First Amendment rights, the record shows he was the first Negro social worker employed by the Defendant in Okaloosa County, Florida. In September, 1960, he became the center of controversy for the first time. From the record, he became involved in

a school affair involving double sessions at one of the elementary schools that was then attended solely by Negro children. His activities resulted in a complaint to the Board from the County Superintendent of Public Instruction, and it conducted an investigation. As a result of the incidents and the investigation that followed, Plaintiff was counseled by his supervisors and advised by them that it was contrary to the Board's and the Department's policy for social workers to become involved in controversial issues affecting the community and that might impair the effectiveness with which a social worker performed his duties. Plaintiff signed a statement of understanding at that time, that "repetition of such incidents will not be tolerated (we mean by this that we would not tolerate his creating a disturbance at a public meeting or exhibit a negative attitude toward public officials, and so forth * * * *", and no other action was taken by the Board. From the record, it appears any controversy resulting from this incident soon died down. Except for this minor incident, the Department's evaluation of his work from 1956 through 1964 indicates satisfactory performance by him, with his working satisfactorily with fellow employees and county officials with whom his work brought him in contact.

In the spring of 1965, however, several of the local county officials lodged complaint about Plaintiff with Mr. Lee, a representative of the Governor's office and member of the state legislature. Mr. Lee, in turn, passed these complaints on to officials of the Department, with either the suggestion or demand that Plaintiff be transferred out of Okaloosa County. An investigation of these complaints immediately resulted through the offices of Mrs. Reardon, Director of this Board, and Mrs. Horne, State Personnel Director.

Various Okaloosa County officials were interviewed concerning their objections to Mr. London. Each of them responded to the inquiry, and each, in effect, advised he felt the Plaintiff was belligerent, antagonistic and rude, and that his attitude made it difficult for them to work with him. Each of them also stated under oath that their opinion regarding him was not motivated by racial prejudice. One of them so interviewed was, himself, the Negro principal of a high school; at least two of them who are white, in evidence and testimony before this Court, indicated or stated they have Negroes working in their offices, at least at the present time.

Mrs. Horne interviewed Plaintiff personally in her office in Jacksonville, and reached the personal conclusion that if Plaintiff acted, in Okaloosa County, as he acted before her, he would, indeed, be obnoxious to the local officials. She particularly objected to what she felt was his attitude that he could do no wrong, and that any criticism of him was motivated by race or politics. On the basis of her inquiries and interviews, she concluded Plaintiff's effectiveness in Okaloosa County as a case worker was impaired, that Escambia County was a larger county, and that he might be able to work effectively in a new and larger county.

Additional investigation of the complaints concerning Mr. London was conducted through Mrs. Reardon's office. Involved in this investigation were Mrs. Reardon, Mr. Mahan (Plaintiff's supervisor), and Miss Stokes, Okaloosa County Supervisor of the employees of the Board. An informal meeting was held in the latter part of May, 1965, to permit Plaintiff an opportunity to give his view of the controversy. Present at such meeting were Mrs. Reardon, Mr. Mahan, Col. Richardson (the Board Chairman), one member of the personnel committee, and the Plaintiff. Complete transcript of this meeting was not made, but a summary of the meeting was preserved and is in the record before the Court. Following that informal meeting, the Board met, on June 15, 1965, to consider disposition of the matter. The record indicates that while at least one or more of the members of the Board, at that meeting, were not completely convinced

the charges against Plaintiff were justified, Mrs. Horne was adamant in her belief he had to be transferred in order to preserve the continued effectiveness of the Department's work in Okaloosa County. It also indicates the Board, by a fifteen-to-two vote approved Mrs. Horne's recommendation that Plaintiff be transferred.

There is evidence in the record that one or more of those involved, from the Board's standpoint, felt that complaints of county officials may have been based on racial prejudice, but that proof was lacking that such complaints were, in fact, based on racial prejudice.

Col. Richardson, Chairman of the Board at the time of this incident, testified at the hearing before this Court, and discussed circumstances surrounding the transfer. Apparently, he believed that the county officials were not completely justified in their complaints against Plaintiff, but he also felt that Plaintiff had lost his effectiveness as a social worker in Okaloosa County because of the feeling of the people regarding him. He went so far as to say he felt that the basis for transferring him might have been not only to insure his future effectiveness as a case worker in the Department, but for his personal protection. He denied, however, that he was ever under any political pressure to transfer London.

On the appeal to the Council from the transfer, its opinion, rendered on August 22, 1965, contained the finding that "Mr. London's personal effectiveness as a social worker in Okaloosa County has been materially impaired to the degree that his ability to carry out the primary duties and responsibilities of a social worker in Okaloosa County has been greatly diminished."

■ The testimony and evidence before the Court fails to establish by its greater weight, or preponderance, that Plaintiff's transfer resulted from racial prejudice. That there may have been overtones of racial prejudice in the complaints against him does not, of course, establish on the part of those transferring him motivation of racial prejudice, and no such motivation here appears. It seems clear from the record that those of the Board, Department and Council involved in his transfer were motivated solely and simply by consideration of effectiveness and concern for the effectiveness and efficiency of the Department's operations, and nothing else.

This Court recognizes the difficulty inherent in attempting to prove subjective elements of racial prejudice or motivation, but this Court finds no basis, in the evidence and testimony before it, that the officials involved in the transfer were so motivated. To the contrary, it seems clear that some of them, at least, were concerned that the complaints of Plaintiff's effectiveness may have been the result of racial prejudice on the part of those complaining, and that, because they were concerned, they reached, almost reluctantly, the conclusion that, for the efficiency and effectiveness of the system, as well as his own effectiveness, he must be transferred. And the record does establish that his actions engendered, properly or improperly, the complaints against him.

This Court finds and concludes that on the record before it, Plaintiff has not carried the burden of proving the Board, in transferring Plaintiff was motivated by racial prejudice, and that such transfer was in violation of his civil rights. In fact, and as evidence to the contrary, the record indicates a Negro case worker was by the Board hired to replace Plaintiff when he was transferred.

Let this decision be not misunderstood. There is distinct impression, from the evidence, that both the county officials making complaints and Plaintiff may have borne their race like chips upon their shoulders. Such, if true, is less understandable in public officials elected to serve and represent all of the people of their county than it is in a public employee the first of his race to be employed in his capacity in his county. But it is to be condoned in neither. Because

of this Court's holding the Board, Council and their employees acted without regard for race, this Court need not, and does not, give that facet of this case further consideration.

Plaintiff also charges transfer in violation of his First Amendment rights of freedom of speech, assembly and association. It is uncontradicted the complaints concerning Plaintiff arose both because of his manner and his speech while engaged in activities unrelated to his work. This Court finds and holds that, even though Plaintiff's transfer resulted, in large part, from complaints respecting such, his transfer did not violate his First Amendment rights. Jenson v. Olson, 353 F.2d 825 (8 Cir. 1965), held that "The First Amendment guarantees free speech and assembly, but it does not guarantee Government employ. * * * There is no basic right to Government employ, any more than there is to employment by any other particular employer." Accord, Adler. v. Board of Education of The City of New York, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952). Plaintiff, as an employee, had the duty to comply with the reasonable requirements and regulations established by the Department. One of these requirements was that employees not engage in community controversies that might disrupt the effective performance of their duty. Such requirement is reasonable. Here, from the record, the Board in good faith believed that London's conduct had adversely affected his effectiveness, and impaired the work of the Board. Again, as stated in Jenson v. Olson, supra, "When his speech is disruptive of the proper functioning of the public's business the privilege of governmental employment may be withdrawn without it being said that he was denied his freedom of speech."

The record here presents a picture of public officials concerned about activities of one of their employees and complaints against him and in good faith concluding, for his own efficiency and that of the Department, he must be transferred. That they, or some of them, were concerned about the possibility [1] of racial overtones in the complaints against him bolsters rather than detracts from the conclusion of good faith by them.

Presented also is the picture of a public employee who pursues, as he has the right to pursue, his constitutional rights of freedom of speech, assembly, and association; but does so without regard to its effect on his public employment. He has no right of public employment; where, as here, his exercise of his rights reduces and impairs his effectiveness and that of his public employer, he is subject to good faith transfer or dismissal.

Here, neither the Board nor the Council, on the appeal, dismissed the Plaintiff from employment. Instead, they transferred him, believing that he might be able to work effectively and efficiently in another county. There is simply no basis here for holding this transfer to be in violation of his First Amendment rights.

Plaintiff also contends the transfer by the Board and the Council was arbitrary, capricious and unreasonable. On this aspect of the case, a court may not substitute its judgment for that of the Board, or the Council. It is not the Court's function to review the wisdom or good judgment of these state officials in the exercise of their discretion in matters of employee transfer or removal. Johnson v. Branch, 364 F.2d 177 (4 Cir. 1966). On the record before the Court, it is concluded, and the Court finds, the action of these state officials in accomplishing Plaintiff's transfer was based on substantial and sufficient evidence, and may not be held to be arbitrary, capricious or unreasonable.

Moreover, even assuming, arguendo, his transfer was in violation

---

1. That possibility was present in connection with his Okaloosa employment; on the record, complaints regarding his work in Escambia County resulted in no wise from racial prejudice.

of his First and Fourteenth Amendment rights, it would not follow he could now obtain the relief he seeks. He did not have to accept the transfer; he could then have refused it, and brought court action concerning it. Instead, he chose, finally, to accept the transfer and to undertake the performance of his duties as case worker in Escambia County. Having done so, he was required to perform properly his employment in Escambia County. If he was properly dismissed from that employment because of inefficiency or other valid reasons, he may not now demand or be given reinstatement and back pay on any charge that his initial transfer violated any constitutional rights he may have had.

Going now to his employment in Escambia County following his transfer, the record shows he was permanently dismissed on March 4, 1966, by action taken by the Board at its meeting on February 15, 1966. The reasons for such dismissal were stated as follows: "Due to your inefficiency, inability, or unwillingness to perform the duties of your position in a satisfactory manner, your tardiness and excessive use of sick leave * * *."

Plaintiff appealed the dismissal to the Council and a trial de novo on the issue of his dismissal was held. The Council, by order dated June 24, 1966, sustained the decision of the Board in dismissing Plaintiff from his position.

 The state officials here involved must be given wide discretion in exercising their judgment in the dismissal of employees, but the exercise of such power cannot be done in an arbitrary and unreasonable manner, nor in such a way as to infringe on the First Amendment rights of freedom of expression and association, nor in a racially discriminatory manner. Johnson v. Branch, supra. If none of this is shown before this

Court, the discretion vested in the state officials regarding the dismissal should not be disturbed by this Court; it cannot and should not substitute its judgment for theirs. Johnson v. Branch, supra. The transcript of the proceedings held before the Council May 27 and 28, 1966, and the written opinion and order of the Council relative to that hearing are before this Court, as is the testimony and evidence taken at the trial before this court. From the record, this court concludes and finds that the findings of the Merit System Council were not arbitrary or unreasonable and were based on substantial evidence sufficient to support its conclusions. In addition, this Court holds and finds there was not sufficient evidence presented before the Council or before this Court to substantiate Plaintiff's allegation that he was dismissed because of racial prejudice or in violation of his freedoms of expression or association.[2]

There remains one final contention of Plaintiff—that the Council denied him a subpoena duces tecum requiring the production of certain documents. In Plaintiff's post-trial brief this contention is not pursued, but it was presented in the pleadings and was the subject of testimony at the trial.

The record is not entirely clear. As best this Court can determine, Plaintiff, before employing an attorney, made a request that certain documents be "subpoenaed." His request was entirely overbroad. Presumably recognizing this, his counsel thereafter by letter made a narrower request, stating that he wished to "subpoena" Plaintiff's case load at Unit 6, Pensacola, Florida, and at Unit 14, Crestview, Florida.

It also was overbroad—at the hearing the Council was concerned only with the quality of Plaintiff's work after he was

---

2. There were no racial overtones in the charges before the Council at the dismissal hearing. Plaintiff, apparently recognizing such, took the position racial prejudice from his Okaloosa County employment followed him to Escambia County and, in effect, tainted the dismissal charg-

es. But the evidence fell far short of establishing such. The Council made its position clear—it was deciding the dismissal charges on the quality and character of Plaintiff's work in Escambia County alone, and without any regard to his prior employment in Okaloosa County.

transferred to Escambia County. Before it, at the hearing then were the files on only twenty-two of the Escambia County cases on which Plaintiff had worked.

 Counsel for Plaintiff testified before this Court Plaintiff wanted the case load to review before hearing, with his request denied because they were privileged. He did not place before the Court any other evidence of denial, or reason for denial. According to the sworn complaint, signed by him and Plaintiff, the application of Plaintiff was not denied on that ground. It is not clear, however, on the record, whether the allegation in the sworn complaint refers to the application by Plaintiff or the later application by counsel. Moreover, Florida's Administrative Procedure Act (Ch. 120, Florida Statutes, F.S.A.) contains agency authority for subpoenaes and discovery—had Plaintiff wanted them before trial, it would appear effort should have been made through an attempt by way of pre-trial subpoena duces tecum and deposition.

Be that as it may, the request for the entire Escambia County case load was overbroad and, respecting those portions of it not brought before the Council, may have been privileged.

At the hearing, Plaintiff did complain he had not been given opportunity to review the files being then considered by the Council, but at no time did he ask for recess, continuance, or adjournment to afford him opportunity to review. To the contrary, he testified fully regarding the files discussed before the Council— at one time he stated "I know these records backwards and forward, these are mine." The transcript of the hearing before the Council also indicates five files Plaintiff had specifically requested were included in the twenty-two brought to the hearing.

At the trial before this Court, Plaintiff's testimony respecting these files was taken after he had been given opportunity to review them. Comparison of his testimony before this Court and before the Council reveals striking similarity.

The record before this Court falls far short of establishing that, before the Council, Plaintiff was deprived of opportunity to test, explain or refute the testimony before the Council, or that he was not given a full and fair hearing. No due process or equal protection violation is shown, and this contention of Plaintiff fails.

This decision incorporates both findings of fact and conclusions of law. On the record before the Court, Plaintiff has not carried his burden, and he must be denied the requested relief, with this cause being dismissed at Plaintiff's cost. Judgment to that effect will be entered.