Jose L. ZAPATA et al., Plaintiffs-Appellants,

v.

Preston SMITH, Governor of the State of Texas, et al., Defendants-Appellees.

No. 28456.

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1971.

---

3. Army Regulation 135–91 was amended and now presently provides the right to a hearing.

Pete Tijerina, Mario G. Obledo, Alan Exelrod, San Antonio, Tex., Mike Gonsalez, Del Rio, Tex., for plaintiffs-appellants.

Crawford C. Martin, Atty. Gen. of Tex., Nola White, First Asst. Atty. Gen., Pat Bailey, Executive Asst. Atty. Gen., Robert C. Flowers, Monroe Clayton, Asst. Attys. Gen., Austin, Tex., William D. Ruckelshaus, Asst. Atty. Gen., Seagal V. Wheatley, U. S. Atty., Jeremiah Handy, Asst. U. S. Atty., Robert V. Zener, Raymond D. Battocchi, Attys., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before WISDOM, GOLDBERG, and INGRAHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

Though we are asked to engage in the esoterics of constitutional and statutory construction, we find it unnecessary because our decision here can be rested on more mundane grounds.

■ Plaintiffs brought this suit against the Governor of Texas and the Director of the Office of Economic Opportunity, alleging that they had been illegally and unconstitutionally removed from participation in the Val Verde County VISTA project. Suing under 42 U.S.C.A § 1983 and § 1985(3), plaintiffs sought (1) a declaratory judgment that the Governor either had no power to remove certain volunteers, or, even if the power to remove existed, the manner of its exercise violated standards of due process; and (2) damages for the back pay they would have received if they had not been illegally removed. We need not investigate the details or the merits of plaintiff's arguments save to note that the relief requested was in part a money judgment for back pay and all parties now appear to agree that all claims save that for the back pay are moot. Finding that in such a case the United States is an indispensable party, we must dismiss since the United States has not been joined as a party defendant.

■ It is well settled that when an administrative official is sued individually, the suit is in fact one against the United States

"if 'the judgment sought would expend itself on the public treasury or domain or interfere, with the public administration.'" Dugan v. Rank, 1963, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15, 23.

*Accord:* Land v. Dollar, 1947, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209; Morrison v. Work, 1925, 266 U.S. 481, 45 S. Ct. 149, 69 L.Ed. 394; Simons v. Vinson, 5 Cir. 1968, 394 F.2d 732; American Guaranty Corp. v. Burton, 1 Cir. 1967, 380 F.2d 789.

There is, however, a line of cases, usually spoken of as an exception to this rule, which hold that a suit against an official is not one against the United States if it is alleged either that the official acted beyond the statutory limitations of his power or, even though within the scope of his authority, the powers themselves are constitutionally void. See Dugan v. Rank, *supra*; Malone v. Bowdoin, 1962, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168; Larson v. Domestic and Foreign Commerce Corp., 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, 1631. Suit is justified on the theory that the official's conduct cannot be attributed to the sovereign because the official had no power in fact to do the challenged act. Larson v. Domestic and Foreign Commerce Corp., *supra*.

At first glance our case would appear to come within this exception since the plaintiffs have pled that the dismissal of the VISTA volunteers was both unauthorized by statute, or, if authorized, was an unconstitutional deprivation of due process. However, there is a well recognized exception to the exception which applies to this case and which makes it clear that, despite the statutory and constitutional allegations of the plaintiffs, the suit is nevertheless one against the United States. In Larson v. Domestic and Foreign Commerce Corp., *supra*, the majority explained:

"Of course, a suit may fail, as one against the sovereign, even if it is

claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property. North Carolina v. Temple, 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849 (1890)." 337 U.S. at 691, n. 11, 69 S.Ct. at 1462.

Mr. Justice Frankfurter explained further in his dissenting opinion:

"To the second category belong the cases where an official asserts the authority of a statute for his action but the injured plaintiff challenges the constitutionality of the statute. Threatened injury will then be enjoined if the plaintiff otherwise satisfies the requirements for equitable intervention. Allen v. Baltimore & O. R. Co., 114 U.S. 311, 5 S.Ct. 925, 962, 29 L.Ed. 200; Reagan v. Farmers' Loan & T. Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014, 4 Inters Com 560; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A. ,N.S., 932, 14 Ann.Cas. 764; Rickert Rice Mills v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 80 L.Ed. 513. So also recovery may be had of property in an action against an official when the statute under which the seizure of the property was made is unconstitutional. Poindexter v. Greenhow, 114 U.S. 270, 5 S.Ct. 903, 962, 29 L.Ed. 185. In these cases the suit against one holding office is deemed "a suit against him personally as a wrongdoer, and not against the State." Ex parte Young, 209 U.S. 123, 151, 28 S.Ct. 441, 52 L.Ed. 714, 725, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764, supra.

These cases likewise apply a principle that is clear. There is an appearance of inconsistency in some of the cases only because opinions also are prey to the frailties of composition. Familiar phrases are not always used with critical precision or with due rel-

evance to the circumstances of a particular case.

Specifically, there are instances where the unconstitutionality of a statute was conceded and yet the language of sovereign immunity was invoked to bar suit. See, e. g., North Carolina v. Temple, 134 U.S. 22, 10 S. Ct. 509, 33 L.Ed. 849; Christian v. Atlantic & N. C. R. Co., 133 U.S. 233, 10 S.Ct. 260, 33 L.Ed. 589; Louisiana ex rel. New York Guaranty & I. Co. v. Steele, 134 U.S. 230, 10 S.Ct. 511, 33 L.Ed. 891. These cases do not qualify the principle of the cases in category two. Regard for the facts of these cases brings them within the first category because the nature of the relief requested makes them either cases in which Government property would have to be transferred, or cases where the person sued could satisfy the court decree only by acting in an official capacity. The tortfeasor, that is, is not immunized because he happened to hold office, but because the tort cannot be redressed, or if threatened, averted, without bringing into operation governmental machinery." 337 U.S. at 712, 713, 69 S.Ct. at 1473.

The same principle was recognized earlier in Mine Safety Appliances Co. v. Forrestal, 1945, 326 U.S. 371, 66 S.Ct. 219, 90 L.Ed. 140, where the Court said:

"The sole purpose of this proceeding is to prevent the Secretary from taking certain action which would stop payment by the government of money lawfully in the United States Treasury to satisfy the government's and not the Secretary's debt to the appellant. The assumption underlying this action is that if the relief prayed for is granted, the government will pay and thus relinquish ownership and possession of the money. In effect, therefore, this is an indirect effort to collect a debt allegedly owed by the government in a proceeding to which the government has not consented. The underlying basis for the relief asked is the alleged unconstitu-

tionality of the Renegotiation Act and the sole purpose of the proceeding is to fix the government's and not the Secretary's liability. Thus, though appellant denies it, the conclusion is inescapable that the suit is essentially one designed to reach money which the government owns. Under these circumstances the government is an indispensable party, Minnesota v. United States, 305 U.S. 382, 388, 59 S.Ct. 292, 83 L.Ed. 235, 241, even, though the Renegotiation Act under which the Secretary proposed to act might be held unconstitutional." 326 U.S. at 374–375, 66 S.Ct. at 221 (citations and footnotes omitted).

In the instant case it is clear beyond peradventure that the suit is one against the United States since the remedy sought is back pay which can be satisfied only out of the public treasury. It follows, therefore, that the corollary is clear—the United States is an indispensable party to the action. Mine Safety Appliances Co. v. Forrestal, *supra;* Morrison v. Work, *supra;* Simons v. Vinson, *supra.*

The usual result of a determination that the United States is an indispensable party is dismissal because the United States is protected by sovereign immunity and has not consented to the suit. See, *e. g.,* Dugan v. Rank, *supra;* Malone v. Bowdoin, *supra;* Larson v. Domestic and Foreign Commerce Corp., *supra;* Mine Safety Appliances Co. v. Forrestal, *supra;* Morrison v. Work, *supra.*

In the present case such a result was not at the onset necessary since the United States apparently has waived its immunity in cases of this sort. Suits against the United States for back pay

may be brought in the Court of Claims, 28 U.S.C.A. § 1491, or after 1964 in the district court, 28 U.S.C.A. § 1346.

█ The fact remains, however, that the United States was not made a party to this action and was not served pursuant to Rule 4(d) (4) Fed.Rules Civ. Proc. We have no choice, therefore, but to dismiss this action. The United States may not be sued behind its back. Mine Safety Appliances Co. v. Forrestal, *supra.*

Affirmed.

INGRAHAM, Circuit Judge (specially concurring):

I must respectfully disagree with the manner in which my brothers have disposed of this case and with their refusal to "engage in the esoterics of constitutional and statutory construction." I feel that this court, in shirking its responsibility, has enabled plaintiffs to refile the entire suit again, at the expense of the federal judiciary's valuable time and energy.

The majority opinion begins with the erroneous assumption that plaintiffs brought suit "for damages for the back pay they would have received if they had not been illegally removed." An examination of the original complaint filed in this cause and the proceedings of the district court conducted pursuant thereto indicates that the cause of action was strictly equitable in nature.[1] Nowhere in the complaint or in the proceedings below is there any mention of damages or back pay, nor do I feel it could be reasonably inferred. Back pay was never suggested until plaintiffs' brief on this appeal.[2]

1. The first count of plaintiffs' complaint was as follows:

"1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331, 1343. This is an action in equity, authorized by 42 U.S.C. Sections 1983 and 1985(3), to redress the deprivation, under the color of the laws of the United States and the State of Texas, of rights, privileges, and immunities secured by the First, Fifth, and Fourteenth Amend-

ments of the Constitution of the United States. The amount of controversy exceeds $10,000.00 exclusive of costs and interest."

2. Plaintiffs' prayer did ask for "such other relief appropriate in the circumstances." Such a boilerplate provision cannot in good faith be construed to include a claim for back pay.

Nevertheless, the majority opinion, by this bootstrap operation, now asserts that this was a suit for back pay and must be dismissed for failure to join the United States as a party defendant. This was despite the fact that the Director of OEO has the apparent authority to make such payments as are necessary in the administration of the agency. 42 U.S.C. § 2942.

The court below, in dismissing the suit and denying plaintiffs' motion for a temporary restraining order, found "as a matter of law the 'Vista' programs from Val Verde were never terminated but only the individual volunteers working in those programs were removed from service under Title 42 U.S.C., Section 2992(b)." The court further found "that defendants can remove said volunteers from service without stating reasons or cause therefor." The majority opinion does not sanction this language, thereby permitting plaintiffs to bring this same suit again. I would affirm this language of the district court and these findings, with the reasons stated herein and with a careful explanation of the factual underpinnings:

Plaintiffs were former Volunteers in Service to America (VISTAs) and members of the community of Val Verde County, Texas, and commenced this action against appellees, the Governor of Texas and the Director of the Office of Economic Opportunity (OEO), for the allegedly illegal and unconstitutional removal of appellants from participation in the Val Verde County VISTA project. It was an action in equity, pursuant to 42 U.S.C. §§ 1983 and 1985(3), to redress deprivation of basic Constitutional rights, and an action under 28 U.S.C. § 2201 for a declaratory judgment declaring the acts of appellees unconstitutional as applied to plaintiffs and the class they represent.

The record indicates that there were two VISTA programs in Val Verde County: National VISTAs, responsible to supervisors in the regional office in Austin, Texas, and the Minority Mobilization Program (M.M. VISTAs), composed of Mexican-Americans recruited from the local community. The latter program, funded by the Federal Government and administered by a private agency, was established pursuant to an agreement between OEO/VISTA and the Val Verde County Community Action Agency (the local sponsor). Dissatisfaction over a local incident apparently resulted in considerable friction between local public officials and VISTA workers. On March 10, 1969, the Commissioners Court of Val Verde County passed a resolution requesting the Governor to terminate the VISTA programs in the county. The Governor then formally requested the Director of OEO to terminate both VISTA programs and to dismiss all VISTAs assigned thereunder, explaining that the workers had contributed to the abdication of the respect for law and order, disruption of the democratic process, and provocation of disunity among the citizens. The Director dismissed all of the nineteen volunteers participating in the two projects, although the projects themselves were not abolished. The statutory authority for this action was asserted under 42 U.S.C. § 2992, which has been set out in the footnote.[3]

---

3. Part A. Full-Time Volunteer Programs
§ 2992. Authority to establish full-time programs.
(a) The Director may recruit, select, and train persons to serve in full-time volunteer programs, and upon request of Federal, State, or local agencies, or private non-profit organizations, may assign such volunteers to work—
(1) in meeting the health, education, welfare, or related needs of Indians living on reservations, of migratory workers and their families, or of residents of the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands, or the Trust Territory of the Pacific Islands;
(2) in the care and rehabilitation of the mentally ill or mentally retarded under treatment at nonprofit mental health or mental retardation facilities; and
(3) in connection with programs or activities authorized, supported, or of

The three questions this court should had addressed itself to are as follows:

I. Was there statutory authority to remove the M. M. VISTAs under 42 U. S.C. § 2992(b)?

II. Did the removal of the appellant VISTAs from Val Verde County constitute a violation of their First Amendment rights of freedom of speech and freedom of expression?

III. Did the removal of appellant VISTAs without a hearing or confrontation of their accusers constitute a violation of due process of laws?

I. *The Statutory Basis for Removal*

Appellants contend that the M. M. VISTAs are not subject to the removal provision of 42 U.S.C. § 2992(b), *supra.* They assert that the M. M. VISTAs were created pursuant to 42 U.S.C. §§ 2993 and 2993a,[4] as a special volunteer

a character eligible for assistance under this chapter.

(b) The assignment of volunteers under this section shall be on such terms and conditions (including restrictions on political activities that appropriately recognize the special status of volunteers living among the persons or groups served by programs to which they have been assigned) as the Director may determine, including work assignments in their own nearby communities; but volunteers under this part shall not be assigned to duties or work in any State without the consent of the Governor. The assignment of such a volunteer in any State shall be terminated by the Director when so requested by the Governor of such State not later than thirty days or at a time thereafter agreed upon by the Governor and Director after such request has been made by the Governor to the Director.

§ 2992a. Terms of service—Commitment to full-time service.

(a) Volunteers under this part shall be required to make a full-time personal commitment to combatting poverty. To the extent practicable, this shall include a commitment to live among and at the economic level of the people served, and to remain available for service without regard to regular working hours, at all times during their term of service, except for authorized periods of leave.

One-year enrollment; shorter enrollment for volunteer associates.

(b) Volunteers under this part shall be enrolled for one-year periods of service, excluding time devoted to training. The Director may, however, allow persons who are unable to make a full one-year commitment to enroll as volunteer associates for periods of service of not less than two months where he determines that this more limited service will effectively promote the purposes of this subchapter.

Oath or affirmation.

(c) All volunteers under this part shall take and subscribe to an oath or affirmation in the form prescribed by section

2716 of this title, and the provisions of section 1001 of Title 18, shall be applicable with respect to that oath or affirmation.

§ 2992b. Support of full-time volunteers. —Stipend; allowances.

(a) The Director may provide a stipend to volunteers under this part while they are in training and on assignment, but the stipend shall not exceed $50 per month during the volunteer's first year of service. He may provide a stipend not to exceed $75 per month in the case of persons who have served for at least one year and who, in accordance with standards prescribed by him, have been designated volunteer leaders on the basis of experience and special skills. The Director may also provide volunteers such living, travel (including travel to and from the place of training), and leave allowances, and such housing, supplies, equipment, subsistence, clothing, health and dental care, or such other support, as he may deem necessary or appropriate for their needs.

Payment upon completion of term; advancement of accrued stipend.

(b) Stipends shall be payable only upon completion of a term of service; except that in extraordinary circumstances the Director may from time to time advance accrued stipend, or any portion thereof, to or on behalf of a volunteer. In the event of the death of a volunteer during service, the amount of any unpaid stipend shall be paid in accordance with the provisions of section 5582 of Title 5.

4. Part B.—Auxiliary And Special Volunteer Programs

§ 2993. Community service programs— Term of service; activities.

(a) The Director shall develop programs designed to expand opportunities for persons to participate in a direct and personal way, on a part-time basis or for shorter periods of service than are required for enrollment under section 2992 of this title, and in their home or nearby

program, and that these sections vest no power of removal in the Governor.

Appellants concede that the Governor possessed the power to remove the National VISTAs under § 2992(b). but argue that the M. M. VISTAs were commissioned under § 2993a. In my opinion, the M. M. VISTAs were workers within § 2992 and their removal was legal under § 2992(b).

While it is clear that the M. M. VISTA program differed in its manner of recruitment, training and supervision of workers, there are several factors which lead to the conclusion that the M. M. VISTAs were § 2992 workers. In the first place, volunteers recruited under

§ 2992 are considered full-time workers and are to be enrolled for one year periods.[5] Appellant workers were all serving on a full time-time basis.[6] On the other hand, § 2993 calls for programs on a part-time basis. Moreover, § 2993(b) specifically prohibits a living allowance or stipend, as authorized by § 2992b. Plaintiffs' primordial assertion, however, is that they are or were § 2993 workers. Should we conclude that the prayer for relief can be construed to include a request for back pay, as the majority opinion has done, we have placed the plaintiffs in the unenviable position of having to admit that which they adamantly deny—that they are § 2992 workers (subject to removal)—all to se-

---

communities, in volunteer activities contributing to the elimination of poverty. Pursuant to appropriate plans, agreements, or arrangements the Director may provide financial, technical, or other assistance needed to carry on projects that are undertaken in connection with these programs. These projects may include, without limitation, activities designed (1) to encourage greater numbers of persons to participate, as volunteers, in local programs and projects assisted under this chapter, with particular emphasis upon programs designed to aid youth or promote child development; (2) to encourage persons with needed managerial, professional, or technical skills to contribute those skills to programs for the development or betterment of urban and rural neighborhoods or areas having especially large concentrations or proportions of the poor, with particular emphasis upon helping residents of those neighborhoods or areas to develop the competence necessary to take advantage of public and private resources which would not otherwise be available or used for those programs; and (3) to assist existing national and local agencies relying upon or in need of volunteers to obtain volunter services more readily, or to provide specialized short-term training, with particular emphasis on agencies serving the most seriously disadvantaged, operating in areas of the most concentrated poverty, or having similar critical needs.

Support and allowances.

(b) Persons serving as volunteers under this section shall receive no living allowance or stipend and only such other support or allowances as the Director determines, pursuant to regulations are re-

quired because of unusual or special circumstances affecting the project.

Allowance of service as non-Federal contribution.

(c) The services of any person, if otherwise allowable as a non-Federal contribution toward the cost of any program or project assisted under this chapter or any other Federal Act, shall not be disallowed merely by reason of actions of the Director under this section in providing for or assisting in the recruitment, referral, or preservice training of such person. (Pub. L. 88—452, title VIII, § 820, as added Pub.L. 90—222, title I, § 110, Dec. 23, 1967, 81 Stat. 724.)

§ 2993a. Special volunteer programs.

The Director is authorized to conduct, or provide by grant or contract for, special volunteer programs designed to stimulate and initiate improved methods of providing volunteer services and to encourage wider volunteer participation, in furtherance of the purposes of this subchapter. Not to exceed 10 per centum of the sums appropriated or allocated from any appropriation to carry out this subchapter for any fiscal year may be used for programs under this section. (Pub.L. 88—452, title VIII, § 821, as added Pub.L. 90—222, title I, § 110, Dec. 23, 1967, 81 Stat. 724.)

5. See note 3, *supra*, § 2992a(b).

6. A memorandum of the agreement between OEO/VISTA and the Val Verde County Community Action Agency stated that "[t]he Volunteers will serve on a *full-time basis*. Each Volunteer will receive seven days of leave, including one week-end, during his first year of VISTA enrollment. * * *". (emphasis added).

cure relief which they have not asked for.

Finally, there is nothing in § 2992 which prohibits the Director of OEO from using full-time workers in the Special Volunteer Programs, such as the M. M. program.[7] Thus, although the administration of the programs may have been different, the appellants were § 2992 workers. There was statutory authority for their removal. Aside from this authority, the agreement between OEO/VISTA and the local sponsor provided that the sponsor could request the removal of any volunteer, and that *OEO/VISTA could recall any volunteer at any time, and a volunteer could resign at any time.* It seems quite clear that the Director of OEO acted within his powers by withdrawing appellants from Val Verde County.

## II. *First Amendment Freedoms of Speech and Association*

Appellants allege that the National and M. M. VISTA's First Amendment rights of freedom of speech and association have been violated when they were removed from their positions in Val Verde County. In support of this contention, appellants assert that the request for their removal was a result of their membership in a local organization dedicated to the improvement of the conditions of the Mexican-American in Texas. Appellants believe that freedom of association requires that VISTA volunteers be allowed to join an organization whose purposes are exactly the same as the stated goals of the VISTA program.

There is little merit in these arguments. In essence, we must balance the inhibitions on freedom of speech and association against the legitimate interests of the government and the manner in which these interests are protected.

See, e. g., Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); Ferguson v. Thomas, 430 F.2d 852, at 859 (5th Cir. 1970).

Any organization in which appellants might have participated could have held goals identical to those of VISTA. Fighting poverty, achieving better conditions, etc. are broad goals which organizations running the gamut of the political spectrum might share. Could appellants, as VISTAs, participate in any organization regardless of the means used by such organization to achieve its goals? We think not. Although Congress cannot actively seek to suppress opposition to local political activities and associations, it is not required to support such actions. Appellants could have remained in Val Verde County, participated in demonstrations and helped members of the community assert their political rights. They cannot, however, engage in said activities as members of this federally sponsored program, especially when the result is friction and disruption on the state and local levels of government.

Appellants were well aware of the power of recall by the Director and the veto power of the Governor. These represented a valid recognition by Congress that it could not sponsor activities antagonistic to local governing authorities without some means of control.

The cases appellants cite, mainly involving the rights of teachers with respect to unions, loyalty oaths, etc., are not controlling. For example, even in McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968), in which the state's interest did not outweigh the plaintiff's associational freedoms, the court ex-

---

7. Section 2992(a) (3) apparently authorizes the Director to utilize full-time volunteers recruited under § 2992 in connection with any of the OEO programs.

plained that "[i]t is possible of course that at some future time plaintiffs may engage in union-related conduct justifying their dismissal." 398 F.2d at 289.

Appellants in the instant case could have requested a transfer to other areas, or, in the alternative, resigned their appointments as VISTAs and pursued their political activities. Appellants' First Amendment freedoms have not been violated. The action taken by appellees, pursuant to § 2992(b), *supra*, which specifically refers to restrictions on political activities, was justifiable in the exercise of a legitimate governmental interest. See Jenson v. Olson, 353 F.2d 825, 828 (8th Cir. 1965); London v. Florida Department of Health & Rehab. Serv., 313 F.Supp. 591, 596 (N.D. Fla.1970).

### III.  *Constitutional Due Process*

Appellants submit the argument that their removal without a hearing or opportunity to confront their accusers violated their right to due process of law, and that the government was vested with an arbitrary unlimited power.

To my knowledge, the minimum requirements of due process in the termination of a VISTA volunteer's employment have never been passed upon by a federal appellate court. I do not feel inclined to conduct the searching analysis of the agency procedures necessary for such a determination. In the first place appellants were not "terminated" or "fired". They were withdrawn from the project in Val Verde County. The VISTA Volunteer Handbook for 1968 (§ VIII) provides that "it may become necessary to transfer a Volunteer to another project or terminate his service if this is in the best interest of the total VISTA program. Consideration will always be given to a transfer before terminating a Volunteer's service." Appellants, however, chose other avenues of endeavor, such as returning to college or seeking other employment.

Moreover, even in a case of dismissal from public employment, whether or not a hearing is required depends upon a balance of factors such as the need for the government to act summarily and the extent to which the employee will be harmed by the dismissal. Meredith v. Allen County War Memorial Hospital Com'n., 397 F.2d 33, 36 (7th Cir. 1968); Birnbaum v. Trussell, 371 F.2d 672 (2nd Cir. 1966). See Cafeteria & Restaurant Workers Union, etc. v. McElroy, 367 U. S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The extent of harm to the employee is often indicative of his interest, and in these cases and others, the substantial interests usually involved are reputation and the ability to pursue a profession. Birnbaum v. Trussell, *supra*, 371 F.2d at 678.

The action taken against appellants did not deprive them of the pursuit of a profession, and they do not wear a "badge of infamy" because of their removal. Wieman v. Updegraff, 344 U.S. 183, 191, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Norton v. Macy, 135 U.S.App. D.C. 214, 417 F.2d 1161, 1164 (1969). They are unlike the plaintiff in Lucas v. Chapman, 430 F.2d 945 at 947 (5th Cir., 1970), whose "long employment in a continuing relationship through the use of renewals of short-term contracts was sufficient to give him the necessary expectancy of reemployment that constituted a protectable interest." In the case at bar, appellants were not protected by Civil Service laws. In 42 U.S.C. § 2994b, it is specifically provided that VISTAs are not subject to laws relating to federal employment, and are not federal employees, except for tax and social security purposes. They are also subject to Hatch Act restrictions on political activities. Thus, they are similar to temporary or probationary workers. In Jaeger v. Freeman, 410 F.2d 528 (5th Cir. 1969), plaintiff was under a one-year probationary employment as a government poultry inspector and was dismissed. In denying him reinstatement and back pay, this court held that due

process does not in every instance require the government to grant a trial-type hearing to a discharged employee, and found no compelling reasons to impose such a requirement prior to dismissal of probationary employees. See Medoff v. Freeman, 362 F.2d 472 (1st Cir. 1966).

We should thus have rejected appellants' claim that they were deprived of a constitutional hearing. The Eighth Circuit, in Freeman v. Gould Special Sch. Dist. of Lincoln County, Ark., 405 F.2d 1153 (1969), stated:

> "[T]here are many public employees who are separated from their employment by a purely arbitrary decision, upon a change of administration or even a change of factual control where the appointments are not protected by civil service or some type of tenure, statutory or contractual. * * *

> "Absent statutory or contractual requirements, persons discharged for inefficiency, incompetency, or insubordination have no constitutional right to a hearing with rights of cross examination and confrontation of witnesses."

405 F.2d at 1160, 1161. See Jones v. Hooper, 410 F.2d 1323, 1327–1328 (10th Cir. 1969). Even among presidential cabinet members and governors' aides, transfers and removals are frequently made without regard to procedural safeguards. Appellant VISTAs are "volunteers" in the executive branch in the true sense of the term, and must accept a similar policy of summary transfer.

Such a decision might seem harsh, but this court should have taken note of the importance of the reputation of the VISTA program as a whole. Its very survival may depend upon its achieving an adequate level of cooperation and rapport with local governing officials.

I would affirm the district court without qualification.