Isaac **LONDON**, Plaintiff-Appellant,

v.

**FLORIDA DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, DIVISION OF FAMILY SERVICES, Defendant-Appellee.**

No. 30180.

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1971.

Rehearing Denied Oct. 19, 1971.

Theodore R. Bowers, Panama City, Fla., Norman C. Amaker, Vilma M. Singer, Jack Greenberg, William L. Robinson, John D. Iskrant, Theodore R. Wagner, Jonathan R. Harkavy, New York City, for plaintiff-appellant.

S. Strome Maxwell, Michael Schwartz, Asst. Attys. Gen., Earl Faircloth, Atty. Gen. of Fla., Tallahassee, Fla., for defendant-appellee.

Before WISDOM, Circuit Judge, DAVIS,* Judge, and GOLDBERG, Circuit Judge.

PER CURIAM:

If we were not buckled by Fed.R.Civ. P. 52(a) and if the trial court were not shielded by that Rule's "clearly erroneous" fiat,[1] we might very well reverse. While our diligent search through over a thousand pages of record gives us an intimation that the trial court's rulings may have been .wrong, our perquisition nevertheless leaves us unconvinced that on the crucial issues the judge was clearly erroneous. The probability of his error simply does not reach the egregious stage required by United States v. United States Gypsum Co., 1948, 333 U. S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.[2] Bound by that standard of review, we affirm the judgment below.

Plaintiff, Isaac London, was employed by the State of Florida as a social worker from June 15, 1956, until his dismissal on March 4, 1966. All but a few months of this employment period were spent in Okaloosa County, Florida, where London was the only black social worker. In the summer of 1965, plaintiff was transferred by the District Welfare Board from Okaloosa County to Escambia County, Florida. This transfer grew out of complaints registered by numerous Okaloosa County public officials who felt that plaintiff was so "belligerent," "antagonistic," and "rude" that they could not work with him in his capacity as a social worker. It is clear that at least a portion of these complaints were engendered by the activities of plaintiff on behalf of various civil rights causes in the County.

While protesting his transfer, plaintiff reported for work in Escambia County. After several months, and following numerous warnings that his work was deficient, plaintiff was permanently dismissed on March 4, 1966, "[d]ue to * * * [his] inefficiency, inability, or unwillingness to perform

---

* Honorable Oscar H. Davis, U. S. Court of Claims, sitting by designation.

1. See Horton v. United States Steel Corp., 5 Cir. 1961, 286 F.2d 710, 713 ("District Court * * * fact findings * * * come here well armed with the buckler and shield of F.R.Civ.P. 52(a), 28 U.S. C.A.").

2. In the *Gypsum Company* case the Supreme Court held that a finding may be found clearly erroneous, within the meaning of Rule 52(a), only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." 333 U.S. at 395, 68 S.Ct. at 542.

the duties of * * * [his] position in a satisfactory manner, * * * [his] tardiness and excessive use of sick leave."

Following a *de novo* hearing before an Appeals Council in which his dismissal was upheld, plaintiff filed an action in federal district court alleging that his transfer and subsequent dismissal were based upon racial discrimination and political considerations in violation of his rights under the First and Fourteenth Amendments. After lengthy pre-trial maneuverings, an essentially *de novo* hearing was conducted by the trial court,[3] and judgment was rendered against the plaintiff.[4]

The district court first concluded that while racial prejudice might have generated some of the complaints of Okaloosa officials concerning London's conduct and attitude, the decision by the Board to transfer him was not motivated by racial considerations. Rather, the court found that the Board transferred plaintiff in good faith "for his own efficiency and that of the Department." 313 F.Supp. at 596. Finding that London's political activity and mannerisms antagonized public officials and thereby interfered with the proper performance of his job, the district court held that the transfer did not violate plaintiff's First Amendment rights. Secondly, the district court held that even if plaintiff's rights had been violated by the transfer, his subsequent dismissal was based upon his poor work performance in Escambia and was in no way tainted by the events occurring in Okaloosa. Since this termination did not violate plaintiff's constitutional rights, the court accordingly held that London could not now demand that he be given reinstatement or back pay.

While we affirm the judgment below, we first wish to make clear that we disassociate ourselves from the reasoning of the trial judge which led him to the conclusion that London's transfer from Okaloosa County was tainted with neither racial nor free speech overtones. It is much too superficial to reason that even though some of the complaints registered against plaintiff were racially motivated, London's rights were not impaired since the Welfare Board was not so motivated. Whatever the conscious motivations of the individual members of the Board, its decision to transfer London could remain discriminatory if founded upon testimony or evidence which was tainted by racial prejudice. Moreover, we cannot agree with the reasoning of the district court which seems to hold that since government employment is a mere privilege granted by the state, public employees are of a lesser breed when it comes to the protection of their First Amendment rights. In Pickering v. Board of Educ., 1968, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811, a case not cited by the court below, the Supreme Court completely put to rest such outgrown shibboleths to which even Justice Oliver Wendell Holmes, not a jurisprudential dovecote, once ascribed.[5] Precursive as he generally was, Justice Holmes simply did not anticipate the First Amendment's coalescent embrace of all citizens. The district court was also in error in disregarding this embrace. *See generally*

---

3. With regard to the proper procedure to be followed by a district court in reviewing a dismissal of a state employee, compare Ferguson v. Thomas, 5 Cir. 1970, 430 F.2d 852, 858–859, with Fluker v. Alabama State Bd. of Educ., 5 Cir. 1971, 441 F.2d 201, 208 & n. 15.

4. The district court's opinion is reported at 313 F.Supp. 591.

5. Justice Holmes saw a dichotomous absolutism in applying First Amendment rights to government employees and private citizens, as revealed in the following epigram while speaking for the Massachusetts Supreme Judicial Court:
 "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." McAuliffe v. New Bedford, 1892, 155 Mass. 216, 29 N.E. 517.

Hobbs v. Thompson, 5 Cir. 1971, 448 F. 2d 456; Pred v. Board of Public Instruction, 5 Cir. 1969, 415 F.2d 851; Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439 (1968).

 Having said this much, we nevertheless conclude that the district court's finding that no taint from Okaloosa carried over to the dismissal proceedings in Escambia is not clearly erroneous.[6] If we had been sitting as the trial court, we would have been reminded that a page of history is more significant than a volume of logic. But as an appellate court, we cannot necessarily decree in the historian's role. It seems to us, perhaps because of a lack of naivety in these matters, that the inequities visited upon London in Okaloosa could not have been purged while he worked for a few months in the neighboring county of Escambia. But the trial judge, who is also sophisticated in these matters, concluded otherwise; and his conclusions and findings involved crediblity choices. Listening to the witnesses, he found that there were sufficient emitics to sanitize the Escambia atmosphere, that the decision to dismiss London was based solely upon his work record, and that this latter decision was supported by the evidence. We cannot demonstrate clearly to the contrary. *See* Fluker v. Alabama State Bd. of Educ., *supra*; United States v. LeFlore County, 5 Cir. 1967, 371 F.2d 368; Chaney v. City of Galveston, 5 Cir. 1966, 368 F.2d 774. Therefore, in obedience and obeisance to the mandate of Rule 52(a), we affirm the trial court's judgment.

Affirmed.

---

6. Since we affirm the district court's conclusion that London's Escambia discharge was untainted, we must also affirm the court's denial of plaintiff's requested relief—reinstatement and back pay. Even though the Okaloosa transfer may have been unjustified, plaintiff cannot be reinstated since his ultimate discharge from an employment position he chose to accept is upheld. Nor is back pay warranted, for the Okaloosa transfer, even if improper, did not reduce or affect London's salary.