**UNITED STATES DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**American Federation of Government Employees, AFL–CIO, Intervenor.**

No. 82–1622.

United States Court of Appeals, District of Columbia Circuit.

Argued March 29, 1983.

Decided June 10, 1983.

Nicholas S. Zeppos, Atty., Dept. of Justice, Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and William Kanter, Atty., Dept. of Justice, Washington, D.C., were on brief, for petitioner. Frederick

---

Geilfuss, Atty., Dept. of Justice, Washington, D.C., entered an appearance for petitioner.

William R. Tobey, Atty., Federal Labor Relations Authority, Washington, D.C., for respondent. Steven H. Svartz, Acting Sol., Federal Labor Relations Authority, and Ellen Stern, Atty., Federal Labor Relations Authority, Washington, D.C., were on brief for respondent. Mary Elizabeth Medaglia, Atty., Federal Labor Relations Authority, Washington, D.C., entered an appearance for respondent.

Charles A. Hobbie and James R. Rosa, Washington, D.C., were on brief, for intervenor.

Before WRIGHT and BORK, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

Since the very establishment of the civil service program, Congress has provided ever-increasing procedural protections for government employees who have completed their probationary periods.[1] Congress has always recognized that written and scholastic tests may not adequately measure the job performance qualifications of prospective federal employees, and has therefore authorized agencies to terminate summarily employees for unsatisfactory work performance or conduct during an initial period of their employment—the probationary term.[2] It has, throughout this time, delegated the task of defining and administering the specific probationary term to the President and other officials within the Executive Branch.[3]

In passing the Civil Service Reform Act of 1978 (CSRA),[4] Congress reaffirmed its unwillingness to provide statutory protections for probationary employees being terminated for unacceptable performance.[5] Though it created elaborate procedural protections for employees generally, including a requirement that every collective bargaining agreement between federal agencies and unions contain a negotiated grievance procedure,[6] Congress expressly preserved an agency's discretion to remove summarily a probationary employee. In this case we review an order of the Federal Labor Relations Authority (FLRA), respondent, requiring the Immigration and Naturalization Service (INS), petitioner, to bargain over a

1. In 1883 Congress enacted the Pendleton Act to regulate the federal civil service. *See* 22 Stat. 403 (1883). The original Pendleton Act included a provision requiring completion of a probationary period before final appointment to the service. 22 Stat. 404, ch. 27, § 2(2), (4) (1883).

In 1966, as part of its general recodification of Title 5 of the United States Code, Congress renumbered the probationary period provision. *See* 5 U.S.C. § 3321 (1966). It made no pertinent changes in the coverage of the provision.

2. *See* S.Rep. No. 47–576, 47th Cong., 1st Sess. 7–9 (1881); S.Rep. No. 95–969, 95th Cong., 2d Sess. 45 (1978), U.S.Code Cong. & Admin.News 1978, p. 2723.

3. *See* 22 Stat. 403, ch. 27, § 2(1) (1883); 5 U.S.C. § 3321 (1970). Originally, the Civil Service Commission (CSC) had primary responsibility for specifying the conditions of probationary employment. 22 Stat. 403, *supra;* 5 U.S.C. §§ 1301, 1302 (1970). CSC defined the probationary period to be a year, *see* 5 C.F.R. § 315.802(a) (1977), and established limited procedural protections for such employees, *see* id. §§ 315.804, 315.806(a). The responsibility has now been transferred to the Office of Personnel Management (OPM). *See* 5 U.S.C. §§ 1101, 1201 (Supp. V 1981).

4. Pub.L. No. 95–454, 92 Stat. 1111 (1978). As part of its overall reform of the civil service system, Congress also passed the Federal Service Labor-Management Relations Act, 5 U.S.C. § 7101 *et seq.* (Supp. V 1981) (LMRA).

5. *See, e.g.,* 5 U.S.C. §§ 4303, 7511, 7701 (Supp. V 1981).

6. 5 U.S.C. § 7121(a)(1) (Supp. V 1981). These grievance procedures must ensure, among other things, that a union has the right to present and process grievances of employees in the bargaining unit, *id.* § 7121(b)(3)(A), and further that any grievance not satisfactorily settled under the grievance procedure can be subjected to binding arbitration. *Id.* § 7121(b)(3)(C). However, Congress created specific exceptions to the matters that may be subjected to the grievance procedures. *See, e.g., id.* §§ 7106(a), 7117, 7121(c).

union[7] proposal to bring probationary employees within the mandatory grievance procedures of their collective bargaining agreement. *See* Decision and Order on Negotiability Issues, 8 FLRA No. 75 (April 6, 1982) (hereinafter FLRA Decision), Appendix (App.) 27a–66a. Because we find the proposal inconsistent with other law, we reverse.

## I. BACKGROUND

The factual and procedural history of this appeal is not contested. During contract negotiations between INS and the union, a dispute arose concerning the following union proposal:

> Termination of probationary employees shall be grievable on the basis of whether the Service's actions were reasonable and not arbitrary and capricious, notwithstanding any other provision of this Agreement.

FLRA Decision at 20, App. 46a. INS argued that this proposal would interfere with its right to terminate probationary employees summarily and refused to bargain over it. The union believed the proposal to be bargainable subject matter, however, and therefore asked FLRA to resolve the disagreement.[8]

In its presentation to FLRA, INS urged that the proposal was inconsistent with several provisions in the LMRA and the CSRA. First, it argued that Section 7121(c)(4) of the LMRA—which excludes from any negotiated grievance procedures disputes over "any examination, certification, or appointment"—prohibited bargaining over probationary employees' termination rights.

Second, INS contended that the proposal was inconsistent with Sections 3321 and 4303 of the CSRA, which authorize the probationary period and deny probationary employees any statutory appeal rights. Finally, it contended that the proposal conflicted with governing OPM regulations, which deny probationary employees the right to challenge a removal for unacceptable performance, *see* 5 C.F.R. §§ 315.805, 315.806 (1983). Underlying each of these arguments was INS' general claim that Congress viewed summary termination of probationary employees as essential to the effective and efficient operation of the service,[9] and that the union proposal would undermine the agency's ability early on to discover and terminate unacceptable employees.[10] FLRA Decision at 28–30, App. 54a–56a.

On April 6, 1982 FLRA concluded that the proposal was a negotiable subject for bargaining.[11] It agreed that the probationary period was a necessary part of the "examining process," but nonetheless reasoned that it was not an "examination" within the meaning of 5 U.S.C. § 7121(c)(4) (Supp. V 1981). FLRA Decision at 26, App. 52a. Moreover, it argued that if Congress had meant to exclude grievances challenging termination of probationary employees from the negotiated grievance procedure, it would have excluded probationary employees from the definitions of "employee" and "grievance" contained in Section 7103(a)(2) and (9). *Id.* at 27, App. 53a. Further, FLRA noted that Congress, in Section 7121(c)(3), had specifically excluded from the scope of a negotiated grievance proce-

7. The union involved in this case is the American Federation of Government Employees, AFL–CIO, National Immigration and Naturalization Service Council.

8. 5 U.S.C. § 7105(a)(2)(E) (Supp. V 1981) gives FLRA authority to resolve disputes relating to negotiability.

9. The courts have frequently discussed Congress' recognition of this principle. *See, e.g., Jaeger v. Freeman,* 410 F.2d 528, 531 (5th Cir. 1969); *Medoff v. Freeman,* 362 F.2d 472 (1st Cir.1966); *Semaan v. Mumford,* 335 F.2d 704 (D.C.Cir.1964).

10. All parties to this case agree that all employees—probationary or not—alleging certain kinds of invidious discrimination (*e.g.,* race, sex, national origin, etc.) are afforded specific procedural protections. *See* 5 C.F.R. §§ 315.805, 315.806 (1983).

11. Throughout its decision FLRA relied heavily upon its prior opinion in *Nat'l Council of Field Labor Locals of American Federation of Gov't Employees, AFL–CIO, and U.S. Dep't of Labor,* No. 0–AR–60, 4 FLRA No. 51 (Sept. 30, 1980), App. 19a–26a.

dure a removal based on national security grounds, but had failed similarly to exclude a removal of a probationary employee. *Id.* at 26, App. 52a. These statutory provisions, along with what FLRA perceived to be congressional silence on the matter, led FLRA to conclude that nothing in the LMRA prohibited negotiations over this proposal.

FLRA likewise concluded that the proposal was not inconsistent with the provision creating the probationary term or with OPM regulations implementing that provision. FLRA reasoned that because an arbitrator evaluating a probationer's termination would apply a less demanding standard of review than that required by statute for review of tenured employees' removal,[12] and because that burden was on the employee rather than the agency, the proposal maintained some distinction between probationary and nonprobationary employees. Therefore, FLRA believed the proposal was not inconsistent with Section 3321 or the OPM regulations.

INS filed a timely petition for review with this court on April 6, 1982. We accepted jurisdiction pursuant to 5 U.S.C. § 7123(a) (Supp. V 1981).

## II. ANALYSIS

The LMRA imposes upon both federal agency management and labor a general obligation to bargain in good faith. 5 U.S.C. § 7117 (Supp. V 1981). It requires

---

**12.** The proposal provided for the "arbitrary and capricious" standard of review, whereas the statute provides for "substantial evidence" or "preponderance of the evidence" review. *See* 5 U.S.C. § 7701(c)(1)(A), (B) (Supp. V 1981).

**13.** Section 7103(a)(9) defines "grievance" to include, among other things, "any complaint * * by any employee concerning any matter relating to the employment of the employee" and any complaint "by any labor organization concerning any matter relating to the employment of any employee." 5 U.S.C. § 7103(a)(9) (Supp. V 1981).

**14.** Section 7121(c) excludes from the coverage of any negotiated grievance procedure:
(1) any claimed violation of subchapter III of chapter 73 of this title (relating to prohibited political activities);

the parties to each collective bargaining agreement to negotiate a grievance procedure, including binding arbitration, to settle their disputes. *Id.* § 7121. LMRA broadly defines the grievances subject to these mandatory grievance procedures,[13] but also places specific limits on the matters that may be subject to such procedures.[14] More generally, it prohibits bargaining over any matters inconsistent with other law. *See id.* § 7117(a)(1). The Act thus encourages resort to grievance procedures for peaceful resolution of disputes, but preserves for management certain decisions seen as essential to the effective and efficient operation of the service.

The CSRA specifically identifies one such management prerogative—summary termination of probationary employees.[15] In enacting CSRA Congress left essentially unchanged the provision authorizing a probationary period:

The President may take such action, including the issuance of rules, regulations, and directives, as shall provide * * for a period of probation—

(1) before an appointment in the competitive service becomes final[.]

5 U.S.C. § 3321 (Supp. V 1981). Congress clearly linked the agency's right to discharge summarily a probationary employee to the probationary period:

The probationary * * * period * * * is an extension of the examining process to

(2) retirement, life insurance, health insurance;
(3) a suspension or removal under section 7532 of this title;
(4) any examination, certification, or appointment; or
(5) the classification of any position which does not result in the reduction in grade or pay of an employee.

5 U.S.C. § 7121(c) (Supp. V 1981).

**15.** Indeed, Congress demonstrated its confidence in the need for a probationary period by amending § 3321 to provide that rules may be adopted to require even supervisors to serve a probationary term. *See* 5 U.S.C. § 3321(b)(2) (Supp. V 1981).

determine an employee's ability to actually perform the duties of the position. *It is inappropriate to restrict an agency's authority to separate an employee who does not perform acceptably during this period.* S.Rep. No. 95–969, 95th Cong., 2d Sess. 45 (1978) U.S.Code Cong. & Admin. News 1978, p. 2767 (emphasis added).

To implement CSRA, Congress assigned OPM the task of assisting the President in preparing rules concerning probationary employees. 5 U.S.C. §§ 1301–1302 (Supp. V 1981). Pursuant to this authority, OPM issued rules defining the probationary term, *see* 5 C.F.R. § 315.802(a) (1983), and provided for written notice and a brief statement of reasons in the event of a termination for unacceptable performance or conduct, *see id.* §§ 315.804, 315.806.[16] But OPM regulations do not provide for any internal agency review of terminations or for any review by OPM itself.

In stark contrast to the limited protections Congress and OPM afforded probationary employees are the elaborate procedural protections available to those who have completed their probationary terms. Section 4303 provides that a nonprobationary employee who is removed from the job because of unacceptable performance has a right to: 30 days notice of the removal stating the specific reasons therefor, a reasonable time to answer and offer evidence in support of the answer, legal representation, and a written decision which specifies the instances of unacceptable performance. 5 U.S.C. § 4303(b)(1)(A)–(D) (Supp. V 1981). Furthermore, if the decision is to remove the employee, that employee may seek to set aside the removal by appealing to the Merit Systems Protection Board (MSPB). *Id.* § 4303(e). MSPB must then set aside the agency's decision if it is not supported by substantial evidence. *Id.* § 7701(c)(1)(A).[17] Similarly, Section 7513, which governs removals of nonprobationary employees "for such cause as will promote the efficiency of the service," provides specific procedural rights to challenge a removal. An employee removed on this basis has a right to notice and legal representation, a right to file an answer with supporting evidence, and a right to a decision specifying reasons. As with Section 4303 terminations, the employee can obtain MSPB review. *See* 5 U.S.C. § 7513(b), (d) (Supp. V 1981). Congress could have allowed probationary employees, like tenured employees, to challenge their terminations, but expressly declined to do so.[18] The substantial protections that Congress made available only to tenured employees indicate that Congress recognized and approved of the inextricable link between the effective operation of the probationary period and the agency's right to summary termination. *See* S.Rep. No. 95–969, *supra,* at 45.

The union proposal in this case would provide precisely what Congress would not. Under this proposal an agency would no longer have the right to terminate summarily a probationary employee for unacceptable work performance or conduct. Rather, after an agency decides to terminate a probationary employee, that employee could file a grievance challenging the agency's decision. Since LMRA mandates that all negotiated grievance procedures provide for binding arbitration,[19] the employee would then have the right to contest the agency's reasons before an arbitrator. The arbitrator, in turn, could reject the agency's reasons and order the employee reinstated.

Such a procedure, with its concomitant second-guessing of the agency's decision, is flatly inconsistent with OPM's regulations and undermines the scheme Congress envisioned when it excluded probationary em-

---

**16.** These rules and regulations are essentially identical with those that had previously been established by CSC. *See generally* note 3 *supra.*

**17.** These statutory procedures mirror the rights that existed prior to the CSRA. *See* 5 U.S.C. §§ 7501–7512 (1970).

**18.** Prior to the CSRA probationary employees also did not have any hearing or appeal rights. *See* 5 U.S.C. §§ 7511(1), 7701 (1970).

**19.** 5 U.S.C. § 7121 (Supp. V 1981).

ployees from Sections 4303 and 7513.[20] Congress, with OPM's assistance, has created a scheme whereby probationary employees receive a limited explanation of their terminations, while the agencies retain the right summarily to terminate them for unacceptable work performance or conduct. The limited explanation assures the employees of some minimal due process. The right to summary termination, on the other hand, assures management that it alone can assess an individual's skills and determine whether those skills satisfy the requirements of the service. Ordering INS to negotiate about a proposal that would diminish management's authority over employment decisions undermines the discretion that Congress (and OPM) intended management to have.

FLRA recognized the tension between its decision and the OPM regulations. But it reasoned that no real conflict exists because the union proposal gives probationary employees procedural protections different from those of nonprobationary employees regarding termination for unacceptable work performance. FLRA Decision at 27, App. 53a. FLRA argues that under this proposal a probationary employee can prevail only if he or she demonstrates that the removal was "arbitrary and capricious," whereas under the statute the agency must satisfy either a "substantial evidence" or a "preponderance of the evidence" test to remove a tenured employee, see 5 U.S.C. § 7701(c)(1)(A), (B) (Supp. V 1981). FLRA Decision at 27, App. 53a. Moreover, it notes that under this proposal probationary employees bear the burden of proving wrongful termination, whereas under the statute the burden is on the agency seeking to remove the tenured employee. Id.

But the issue is not whether the proposal provides different protections. To the contrary, the crucial issue is whether Congress intended to allow any shackles whatever to be placed on agency decisions concerning termination of probationary employees for unacceptable work performance or conduct. We think that Congress *affirmatively* preserved the agencies' right to discharge summarily a probationary employee for unacceptable work performance.[21] Furthermore, we think Congress instructed OPM, not FLRA, to implement the probationary program and to provide whatever procedural protections were necessary for probationary employees.[22] But not even OPM could provide for review of agencies' decisions to terminate probationary employees. The concept of a probationary term is of congressional, not administrative, creation.

FLRA further argues that "the clear intent to deny probationers access to statutory appeals procedures carries no persuasive inference of a similar intent with respect to negotiated grievance and arbitration procedures under the Statute." FLRA Decision at 27, App. 53a. This argument overlooks the very reason why Congress denied statutory appeal rights to probationers: to preserve the agencies' discretion to separate a probationer who performs unacceptably. A grievance/arbitration procedure entails the same type of after-the-fact review and limitation on an agency's decision as do the

---

**20.** OPM made this argument in an *amicus* brief to FLRA, but the argument was rejected.

**21.** FLRA's attempted reconciliation of the two statutes is not entitled to any deference. Its reconciliation involves interpreting a statutory provision not within its enabling statute—a provision not within its expertise. Hence we need not defer to it. *Library of Congress v. FLRA,* 699 F.2d 1280, 1286 n. 29 (1983); *accord, California Nat'l Guard v. FLRA,* 697 F.2d 874 (9th Cir.1983); *N.J. Air Nat'l Guard v. FLRA,* 677 F.2d 276 (3d Cir.), *cert. denied sub nom. AFGE v. N.J. Air Nat'l Guard,* —— U.S. ——, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982).

**22.** Thus we reject FLRA's assertion that because Congress did not exclude probationary employees from the broad definitions of "employee," *see* 5 U.S.C. § 7103(a)(2) (Supp. V 1981), and "grievance," *see id.* § 7103(a)(9), it must have intended to permit negotiation over termination of probationary employees. Determination of negotiability issues cannot be resolved by mere reference to the broad definitional provisions in the statute. Section 3321 and the OPM regulations have a long history in our law, *see* notes 1–3 *supra* and accompanying text, and we believe Congress would have been much more explicit had it meant to alter the practice embodied in this history.

statutory appeals procedures. It simply substitutes an arbitrator for MSPB review. Thus we must reject as unsound FLRA's conclusion that Congress' inaction on this matter has "no persuasive inference."

In short, FLRA usurps the authority Congress conferred on OPM when it orders INS to bargain over a subject inconsistent with OPM regulations. Moreover, FLRA undermines the very program that Congress wished to create in doing so. Since LMRA specifically prohibits FLRA from ordering agencies to bargain over subjects inconsistent with other law, *see* 5 U.S.C. § 7117(a)(1) (Supp. V 1981), we reverse.

### III. Conclusion

Congress has long recognized both that federal employees are due certain procedural protections and that federal agencies must be able to terminate employees for unacceptable work performance or conduct. In accommodating these competing concerns, Congress created the concept of the probationary term and authorized agencies to terminate employees summarily during this period. It saw summary terminations as essential to an effective and efficient service, and it has repeatedly acted to preserve the agencies' discretion summarily to remove probationary employees. We detect no retreat from this position in the Civil Service Reform Act of 1978 or in the OPM regulations that implement the congressional mandate.[23] Accordingly, we find the union proposal to be inconsistent with other law, and we reverse FLRA's order that INS bargain over the proposal.

*So ordered.*

23. Because we find the union proposal inconsistent with 5 U.S.C. § 3321 (Supp. V 1981) and 5 C.F.R. §§ 315.805, 315.806 (1983), we need

express no view concerning the consistency of the union proposal with 5 U.S.C. § 7121(c)(4) (Supp. V 1981) or *id.* § 7106(a) & (b).